**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED JULY 6, 2004**

MARGARET PHILLIPS, PERSONAL REPRESENTATIVE
OF THE ESTATE OF REGEANA DIANE HERVEY,
Deceased,

    Plaintiff-Appellant,

v                                            No. 121831

MIRAC, INC.,

    Defendant-Appellee.

_____

BEFORE THE ENTIRE BENCH

TAYLOR, J.

    In this case, we granted leave to appeal to consider whether MCL 257.401(3), which caps the amount of a lessor's liability in motor vehicle leases of thirty days or less, violates plaintiff's rights under the Michigan Constitution to a jury trial,[1] equal protection,[2] or due process.[3] We

---

[1] Const 1963, art 1, § 14.

[2] Const 1963, art 1, § 2.

[3] Const 1963, art 1, § 17.

hold that this damages cap does not implicate plaintiff's right to a jury trial, and does not violate her rights to equal protection or due process. Therefore, we affirm the Court of Appeals decision that the statute is constitutional.

I

Regeana Diane Hervey died in an automobile accident while a passenger in a vehicle being driven by Da-Fel Reed. Reed had leased the vehicle from Mirac, doing business as Enterprise Rent-A-Car. Margaret Phillips, decedent's mother and the personal representative of decedent's estate, initiated a lawsuit against Mirac on the basis of MCL 257.401(3).[4] Generally, MCL 257.401(3) establishes vicarious liability for automobile lessors when permissive users, such as Reed, are negligent and cause automobile accidents injuring others. The act also caps the damages for such lessors at $20,000 for each injured person to a maximum of $40,000 for each accident.

While reserving for resolution the constitutionality of the damage caps, the parties before trial executed a "high-low" agreement for a $150,000 minimum award and a

---

[4] Reed also was sued. A jury found her negligent; however, she is not a party to this appeal.

$250,000 maximum award. The jury returned a verdict of $900,000 against Mirac. This would, of course, have been reduced to $250,000 pursuant to the high-low agreement, unless the statutory damage caps were constitutional, in which case the damages would be reduced to $20,000.

The trial court concluded that the damage caps were unconstitutional on the basis that the statute, in capping damages, violated the right of trial by jury found in art 1, § 14 of the Michigan Constitution. The essence of its holding was that the right of jury trial includes the right of having a jury not only determine damages, but that the jury's determination cannot be altered by the Legislature or courts. The trial court also concluded that the statute violated the Michigan Constitution's provision that guarantees to citizens equal protection of the laws.[5] That is, that it impermissibly causes similarly situated litigants to be treated differently. Using the same reasoning, the trial court concluded that the statute also violates the Michigan Constitution's guarantee of due process of law.[6]

---

[5] Const 1963, art 1, § 2.

[6] Const 1963, art 1, § 17.

On appeal, the Court of Appeals reversed in a two-to-one opinion.[7] The majority determined that the cap did not infringe plaintiff's right to trial by jury for two reasons. First, because the Legislature can abolish or modify common-law and statutory rights and remedies, it necessarily follows that it can limit the damages recoverable for a cause of action. Second, it decided that the statute does not infringe the right to a jury trial because the damages cap does not remove from the jury the determination of facts and amount of damages. The statute simply limits the amount of damages that can be recovered from a lessor of vehicles. Thus, the cap only limits the legal consequences of the jury's finding. 251 Mich App at 590-595.

Therefore, having determined that the cap did not implicate any fundamental right, the majority analyzed whether the cap violates plaintiff's right to equal protection under the rational basis test. The majority concluded that "it can reasonably be assumed that Michigan has a legitimate interest in the continued operation of automobile rental businesses, and protecting those businesses from large damages awards in jury trials bears a

_____

[7] 251 Mich App 586; 651 NW2d 437 (2002).

4

rational relationship to that end." *Id.* at 598. Therefore, the statute did not violate plaintiff's equal protection rights. Similarly, because the tests for due process and equal protection are essentially the same, the cap also did not violate plaintiff's due process rights. *Id.* at 598.

The Court of Appeals dissent would have held that the damages cap is unconstitutional because it violates the right to a jury trial. The dissent explained that "[b]ecause our constitution confers a right to trial by jury, and because the right to trial by jury in Michigan extends to a determination of damages, the damages cap in the instant case is unconstitutional." *Id.* at 599. Thus, the statutory damages cap renders the jury's role illusory. The dissent stated that the Legislature may be free to abolish a cause of action, but it may not abolish a right mandated by the Constitution. *Id.* at 600.

This Court granted plaintiff's application for leave to appeal, "limited to whether MCL 257.401(3) constitutes an unconstitutional denial of plaintiff's right to a jury trial, equal protection, or due process."[8]

---

[8] 468 Mich 943 (2003).

5

When construing a constitutional provision, we must give the words their plain meaning if they are obvious on their face. "If, however, the constitutional language has no plain meaning, but is a technical, legal term, we are to construe those words in their technical, legal sense." *Silver Creek Drain Dist v Extrusions Div*, Inc, 468 Mich 367, 375; 663 NW2d 436 (2003); *Michigan Coalition of State Employee Unions v Civil Service Comm*, 465 Mich 212, 222-223; 634 NW2d 692 (2001), quoting 1 Cooley, Constitutional Limitations (8th ed), p 132.

The constitutionality of a statute is a question of law that is reviewed de novo. *Tolksdorf v Griffith,* 464 Mich 1, 5; 626 NW2d 163 (2001). Statutes are presumed constitutional. We exercise the power to declare a law unconstitutional with extreme caution, and we never exercise it where serious doubt exists with regard to the conflict. *Sears v Cottrell,* 5 Mich 251, 259 (1858); accord, *Taylor v Gate Pharmaceuticals*, 468 Mich 1, 6; 658 NW2d 127 (2003). "Every reasonable presumption or intendment must be indulged in favor of the validity of an act, and it is only when invalidity appears so clearly as to leave no room for reasonable doubt that it violates some provision of the Constitution that a court will refuse to

sustain its validity." *Cady v Detroit*, 289 Mich 499, 505; 286 NW 805 (1939).

III

The statute at issue in this case, MCL 257.401, provides in part:

> (3) Notwithstanding subsection (1), a person engaged in the business of leasing motor vehicles who is the lessor of a motor vehicle under a lease providing for the use of the motor vehicle by the lessee for a period of 30 days or less is liable for an injury caused by the negligent operation of the leased motor vehicle only if the injury occurred while the leased motor vehicle was being operated by an authorized driver under the lease agreement or by the lessee's spouse, father, mother, brother, sister, son, daughter, or other immediate family member. *Unless the lessor, or his or her agent, was negligent in the leasing of the motor vehicle, the lessor's liability under this subsection is limited to $20,000.00 because of bodily injury to or death of 1 person in any 1 accident and $40,000.00 because of bodily injury to or death of 2 or more persons in any 1 accident.* [Emphasis added.] [9]

---

[9] Subsection 1 of the statute provides:

> This section shall not be construed to limit the right of a person to bring a civil action for damages for injuries to either person or property resulting from a violation of this act by the owner or operator of a motor vehicle or his or her agent or servant. The owner of a motor vehicle is liable for an injury caused by the negligent operation of the motor vehicle whether the negligence consists of a violation of a statute of this state or the ordinary care standard required by common law. The owner is not liable unless the motor vehicle is being driven with his or her express or implied consent or
>
> (continued…)

7

Thus, this statute imposes on a motor vehicle lessor vicarious liability for bodily injury or death resulting from the negligence of the lessee (or a listed member of the lessee's family).  The statute, however, sets upper limits on that vicarious liability in the amounts of $20,000 for each person and $40,000 for each accident.

The Michigan Constitution states that:

> The right of trial by jury shall remain, but shall be waived in all civil cases unless demanded by one of the parties in the manner prescribed by law.  [Const 1963, art 1, § 14.]

At issue is whether this constitutional provision makes what the Legislature attempted to do—cap damages even though a jury found that the damages were greater than the cap—unconstitutional.  That is, does MCL 257.401(3) unconstitutionally infringe the right of trial by jury?

The first step in our analysis is to identify the scope of the right as enumerated in the Constitution.  Our Constitution from the time of statehood has had a provision concerning the right of jury trials.  In its earliest form,

_____

(…continued)

> knowledge. It is presumed that the motor vehicle is being driven with the knowledge and consent of the owner if it is driven at the time of the injury by his or her spouse, father, mother, brother, sister, son, daughter, or other immediate member of the family. [MCL 257.401(1).]

**8**

the right was expressed in Const 1835, art 1, § 9: "The right of trial by jury shall remain inviolate." This was changed somewhat by Const 1850, art 6, § 27: "The right of trial by jury shall remain, but shall be deemed to be waived in all civil cases unless demanded by one of the parties in such manner as shall be prescribed by law." This language was unchanged in Const 1908, art 2, § 13, and the 1963 Constitution did not change the substance but only updated the language slightly. As can be seen, we have had virtually the same provision in our Constitution throughout our history and the nub of our inquiry must be, then, what does it mean to say "the right of trial by jury shall remain"?

This Court, speaking through Justice Thomas M. Cooley addressed this in 1880, saying:

> The Constitution of the State provides that 'The right of trial by jury shall remain, but shall be deemed to be waived in all civil cases, unless demanded by one of the parties in such manner as shall be prescribed by law.' Article vi. § 27. The right is to *remain*. What right? Plainly the right as it existed before; the right to a trial by jury as it had become known to the previous jurisprudence of the State. [*Swart v Kimball*, 43 Mich 443, 448; 5 NW 635 (1880) (emphasis in original).]

What is to be taken from this is that to determine what this phrase, "the right of trial by jury shall remain," means, one must look to the jurisprudence of the

state. That is, this phrase is a technical legal phrase with the meaning those understanding the jurisprudence of this state would give it. As we said in *Michigan Coalition, supra* at 223, drawing on Justice Cooley's method of analysis, in construing technical legal terms used in a constitution, "we must suppose these words to be employed in their technical sense." Quoting Constitutional Limitations, *supra*. It is this technical legal meaning that the ratifiers of the 1963 Constitution are held to have adopted. We thus must look for the meaning of "the right of trial by jury" before 1963, as understood by those learned in the law at the time. See *Conservation Dep't v Brown*, 335 Mich 343, 346; 55 NW2d 859 (1952).

Considerable insight into this scope of this right, both historically and as it was understood in the first half of the twentieth century, is provided in the encyclopedic article on this issue in the 1918 Harvard Law Review by Harvard Law professor Austin Wakeman Scott, *Trial by jury and the reform of civil procedure,* 31 Harv L R 669 (1918). While, not surprisingly, Professor Scott found certain elements to have long been regarded as of the "essence" of trial by jury, such as unanimity, impartiality, and competence of the jury, *id*. at 672-674, he also found that the only matters "properly within the

**10**

province of the jury" are questions of fact.  *Id*. at 675.
All other questions, being questions of law, are for the
court.  *Id*. at 677.[10]  Professor Scott's article served as
the bedrock for the United States Supreme Court decision,
*Tull v United States*, 481 US 412; 107 S Ct 1831; 95 L Ed 2d
365 (1987), in which the Court discussed these concepts and
concluded that the jury was confined to finding facts and
that law was for the courts and, moreover, that falling
within the ambit of law was the assessment of civil
penalties.  As the Court said, "The assessment of civil
penalties thus cannot be said to involve the 'substance of
a common-law right to a trial by jury,' nor a 'fundamental

---

[10]  That this view is accurate seems incontrovertible
when the scholarly Scott article is read, and it is
reinforced by the most renowned commentator on the English
common law in the eighteenth century, William Blackstone,
who noted that the jurors "are judges of fact."  3 Comm
361, reprinted in 5 Kurland & Lerner, The Founder's
Constitution 345 (1986), and even Thomas Jefferson, who was
famously no friend of government officials decimating the
power of the common people: ". . . JURIES therefore . . .
determine all matters of fact, leaving to the permanent
judges to decide the law resulting from those facts."
Thomas Jefferson to the Abbé Arnoux, July 19, 1789,
reprinted in Kurland & Lerner, *supra* at 364.  These ancient
references concerning the status of the common law before
Michigan's statehood are significant because in our
earliest Constitution, by way of the ordinances of 1787 for
the government of the Northwest Territory, we adopted what
was in essence the English common law in existence on that
date.  See *In re Sanderson*, 289 Mich 165, 174; 286 NW 198
(1939); *In re Lamphere*, 61 Mich 105, 108; 27 NW 882 (1886);
*Stout v Keyes*, 2 Doug 184 (Mich 1845).

**11**

element of a jury trial.'" *Tull, supra* at 426. This holding in *Tull* was not unexpected because it followed a similar holding in *Galloway v United States*, 319 US 372, 392; 63 S Ct 1077; 87 L Ed 1458 (1943), in which the Court opined that, as expressed in the United States Constitution, the right of trial by jury extends only to "its most fundamental elements, not the great mass of procedural forms and details . . . ."

No other understanding of the proper area for juries to exercise power can be found in Michigan jurisprudence. In 1962, in deciding *McClelland v Scholz*, 366 Mich 423, 426; 115 NW2d 120 (1962), the Court found unexceptional a court rule that required juries to decide questions that relate "only to material issues of fact," a finding that the Court could not have reached had the rule breached the "right of trial by jury" provision in the 1908 Constitution. Moreover, this approach echoed a similar earlier holding in *May v Goulding*, 365 Mich 143, 148-149 (1961). Further, in giving an overview of the area of the law in 1994, this Court held: "Juries traditionally do not decide the law or the outcome of legal conflicts. . . . To maintain the traditional role of the jury, the jury must remain the factfinder; a jury may determine what happened, how, and when, but it may not resolve the law itself."

**12**

*Charles Reinhart Co v Winiemki*, 444 Mich 579, 601; 513 NW2d 773 (1994).

It is clearly the case that, at the time of the drafting and ratification of the 1963 Constitution, those sophisticated in the law understood, and thus the instrument adopted, that the right of trial by jury encompassed a jury that could find facts, including the amount of damages. See, e.g., *Wood v Detroit Automobile Inter-Ins Exchange*, 413 Mich 573, 583-584; 321 NW2d 653 (1982). However, regarding the law, it was for the court to decide that on the basis of the common law, the Constitution, or the statutes the Legislature had enacted.

This should not be taken as dismissing the jury's importance. It is for the jury to assimilate the facts presented at trial, draw inferences from those facts, and determine what happened in the case at issue. See, e.g., *Green v Detroit U R Co*, 210 Mich 119, 129; 177 NW 263 (1920). As important as those duties are, however, matters of law concern the legal significance of those facts. Accordingly, excluded from the jury's purview are such matters as whether a party has met its burden of proof, whether certain evidence may be considered, which witnesses may testify, whether the facts found by the jury result in a party being held liable, and the legal import of the

**13**

amount of damages found by the jury.[11]  Thus, for example, while a jury may find a defendant has acted negligently and the amount of damages occasioned thereby, the court may apply the governmental immunity act, MCL 691.1407, and find there is no liability, despite the plaintiff's damages.  Or a jury may find a hunter has been injured and damaged on a defendant's property because of the defendant's negligence, but the recreational trespass act, MCL 324.73107, will, in certain circumstances, preclude liability.  Moreover, uncontroversially, after the jury has been dismissed, a court may enter an order that doubles or trebles the amount of damages assessed, pursuant to any of the numerous

---

[11] See *Etheridge v Med Ctr Hosps*, 237 Va 87, 96; 376 SE2d 525 (1989), in which the Supreme Court of Virginia noted:

> "The province of the jury is to settle questions of fact, and when the facts are ascertained the law determines the rights of the parties." . . . Once the jury has ascertained the facts and assessed the damages, however, the constitutional mandate is satisfied.  Thereafter, it is the duty of the court to apply the law to the facts.  [Quoting *WS Forbes & Co v Southern Cotton Oil Co*, 130 Va 245, 260; 108 SE 15 (1921)(citations deleted).]

The United States Court of Appeals for the Fourth Circuit has reached the same conclusion: "[O]nce the jury has made its findings of fact with respect to damages, it has fulfilled its constitutional function; it may not also mandate compensation as a matter of law."  *Boyd v Bulala*, 877 F2d 1191, 1196 (CA 4, 1989).

statutes that concern postverdict adjustment of damages.[12] In many ways this parallels the criminal system. While the jury is to find the facts, the court defines the crime and determines the sentence along with any fees or fines to be imposed on the basis of the guidance and requirements set forth by the Legislature. The damage cap is of a piece with these numerous examples that for generations have not been successfully challenged on the basis of constitutional infirmity and that reflect the previously unchallenged understanding springing from a recognition that juries decide only facts.

Thus we conclude that the damages cap contained in MCL 257.401(3) does not offend the constitutional right of trial by jury because the amount the plaintiff actually receives was never within those things a jury can decide.

---

[12] Statutes doubling or trebling damages include MCL 125.996, 230.7, 257.1336; statutes that set a minimum recoverable amount include MCL 14.309, 339.916, 445.257, 445.911, 550.1406; statutes that provide for adding costs, fees, interest or penalties to awards include MCL 35.462, 125.1449m; court-determined remittitur and additur is provided for in MCR 2.611(E); and postverdict reduction of awards to present value is permitted by MCL 600.6306(1)(c). "[T]he practice of awarding damages far in excess of actual compensation for quantifiable injuries was well recognized at the time the Framers [of the United States Constitution] produced the Eighth Amendment [relating to excessive bail, fines, or cruel or unusual punishment]." *Browning-Ferris Ind of Vermont, Inc v Kelco Disposal, Inc*, 492 US 257, 274; 109 S Ct 2909; 106 L Ed 2d 219 (1989).

Damage caps are constitutional in causes of action springing out of the common law because the Legislature has the power under our Constitution[13] to abolish or modify nonvested, common-law rights and remedies. *Donajkowski v Alpena Power Co,* 460 Mich 243, 256 n 14; 596 NW2d 574 (1999). The case is even more convincing when, as here, the liability—an owner's liability for the negligent driving of a permissive user—is a statutory creation. If the Legislature can create a cause of action, it must be able to eliminate or modify it. *Karl v Bryant Air Conditioning Co,* 416 Mich 558, 573-576; 331 NW2d 456 (1982). Otherwise, one Legislature could bind a subsequent Legislature to not undo its work. This is impermissible. *Pittsfield Twp v Washtenaw Co,* 468 Mich 702, 713; 664 NW2d 193 (2003), citing *Malcolm v East Detroit,* 437 Mich 132, 139; 468 NW2d 479 (1991). That being so, it logically follows that the Legislature can also take the less drastic step of leaving the cause of action intact, but limiting the damages recoverable for a particular cause of action

---

[13] Art 3, § 7 of the Michigan Constitution states:

> The common law and the statute laws now in force, not repugnant to this constitution, shall remain in force until they expire by their own limitations, or are changed, amended or repealed.

from a particular defendant.[14]   See *Karl, supra* at 577; *Shavers v Attorney General*, 402 Mich 554, 623; 267 NW2d 72 (1978).

Like the congressionally imposed civil penalties discussed in *Tull, supra* at 426, the Michigan Legislature's limits on defendant's liability do not involve the "'substance of a common-law right to a trial by jury,'" or a "'fundamental element of a jury trial.'" (Citations deleted.)  These are things that are not under the umbrella of the right.  In other words, MCL 257.401(3) only limits the *legal* consequences of the jury's finding regarding the liability.  Plaintiff's right to a jury trial is not implicated.  She has had a jury trial and the jury determined the facts of her case.  The jury's function is complete.  It is up to the court to determine the legal effect of those findings, whether it be that her damages

---

[14] We note that the Legislature has limited a plaintiff's ability to fully recover his assessed damages in other circumstances, such as where he is more than fifty percent at fault, MCL 600.2955a (constitutionality upheld in *Wysocki v Kivi*, 248 Mich App 346; 639 NW2d 572 [2001]) and 500.3135; if he was operating his own vehicle while uninsured, MCL 500.3135(2)(c); if a judgment in his favor was discharged in bankruptcy, MCL 600.2914; if his claim involves noneconomic damages in a products liability action, MCL 600.2946a (constitutionality upheld in *Kenkel v Stanley Works*, 256 Mich App 548; 665 NW2d 490 [2003]).

are capped, reduced, increased, tripled, reduced to present value, or completely unavailable.

## IV

Plaintiff also asserts that MCL 257.401(3) violates our Constitution's Equal Protection Clause, which provides in part, "No person shall be denied the equal protection of the laws . . . ."  Const 1963, art 1, § 2.  It is her argument that she, unlike plaintiffs in litigation *not* concerning rental cars, cannot recover what the jury has decided are her damages.  Thus, she argues, she is denied the equal protection of the law under the Michigan Constitution.

At issue, then, is whether the different treatment given to plaintiffs in cases of this sort is constitutional.  As is apparent, when any statute is passed, the Legislature is almost invariably deciding to treat certain individuals differently from others.  This exercise of discrimination between citizens means, for example, that some pay taxes at one rate, while others pay at another rate.  Or some get a tax or social service benefit that others do not, and so on.  Line drawing of this sort is inherent in all governments and in ours it is done at the state level by the Legislature, Const 1963, art 4, § 1, and locally by local legislative bodies.  The

Constitution of Michigan was, in fact, written in large part to institutionalize this method of decision-making. Thus, it is apparent that when the Legislature acts, it cannot be that the mere occurrence of different outcomes between two citizens is in itself sufficient to make an act unconstitutional. Otherwise, what the Constitution gives with one hand—the right to representative government—it would have taken away with the other—the equal protection guarantee. Accordingly, courts here and elsewhere in the United States have been very guarded about overruling the legislatures' decisions by declaring unconstitutional the classifications that a legislature defined. Indeed, the undesirability of courts entering into this area prompted United States Supreme Court Justice Oliver Wendell Holmes to deride all arguments of this sort as "the usual last resort of constitutional arguments." *Buck v Bell*, 274 US 200, 208; 47 S Ct 584; 71 L Ed 1000 (1927). Yet, even with this reluctance, the courts have been willing to intervene in a narrow class of cases.

As the law has developed, the first category of such cases is where "strict scrutiny," as the courts have described it, has been applied to the legislative decision. For a decision to be subject to such scrutiny, it must be a classification that is based on "suspect" factors such as

race, national origin, ethnicity, or a "fundamental right." *Harvey v Michigan,* 469 Mich 1, 6-7; 664 NW2d 767 (2003); *Plyler v Doe*, 457 US 202, 216-217; 102 S Ct 2382; 72 L Ed 2d 786 (1982). When such review is called for, the courts require "the State to demonstrate that its classification has been precisely tailored" and it must "serve a compelling governmental interest." *Plyler*, at 216-217; *DeRose v DeRose*, 469 Mich 320, 353; 666 NW2d 636 (2003)("narrowly tailored"). If this is missing, the statute falls to the Constitution.

The second type of case in which courts will intervene are those described as cases that implicate intermediate level scrutiny. Here, the court, using "heightened scrutiny," reviews legislation creating classifications on such bases as illegitimacy and gender. *Harvey, supra* at 8. Under this standard, a challenged statutory classification will be upheld only if it is substantially related to an important governmental objective. *Id*.

The third level is "rational basis" review. Under this test, "courts will uphold legislation as long as that legislation is rationally related to a legitimate government purpose." *Crego v Coleman*, 463 Mich 248, 259; 615 NW2d 218 (2000). This highly deferential standard of review requires a challenger to show that the legislation

**20**

is "'arbitrary and wholly unrelated in a rational way to the objective of the statute.'" *Id.*, quoting *Smith v Employment Security Comm*, 410 Mich 231, 271; 301 NW2d 285 (1981).

In the present case, plaintiff claims that the discrimination imposed on her should be evaluated on the basis of strict scrutiny. She characterizes the right at issue as the right to a jury trial. However, rights are always to be identified at "the most specific level at which a relevant tradition protecting, or denying protection to, the asserted right can be identified." *Michael H v Gerald D*, 491 US 110, 127 n 6; 109 S Ct 2333; 105 L Ed 2d 91 (1989). This means that, rather than describing the right sweepingly, we are to define it with the most precision possible. In this case, we conclude that the right at issue here is not the overarching right to have a jury trial but, more precisely, a claimed right to have a jury's assessment of damages be unmodifiable as a matter of law.

With the right properly understood, we turn to whether it is of the sort to which strict scrutiny applies. The United States Supreme Court has developed a test for strict scrutiny that this Court has followed when interpreting our own Constitution. See, e.g., *DeRose, supra.* Because this

case clearly does not result in discrimination by race, national origin, or ethnicity, nor affect an interest that is fundamental, that is, "an interest traditionally protected by our society," *Michael H, supra* at 122, this statute does not warrant strict scrutiny review. While rights such as this may be "important and valuable," they are not encompassed by strict scrutiny unless they are "implicit in 'the concept of ordered liberty.'" *People v Gonzales*, 356 Mich 247, 260; 97 NW2d 16 (1959), citing *Palko v Connecticut*, 302 US 319; 58 S Ct 149; 82 L Ed 288 (1937). The right to full recovery in tort is not only not a fundamental right, it is not a right at all, as the discussion above makes clear. Therefore, strict scrutiny does not apply.

Concerning intermediate scrutiny, this legislative action has nothing to do with allegations of gender or illegitimacy and thus heightened scrutiny is inappropriate.

This leaves the rational basis test as the proper foundation for analysis. Rational basis applies to social and economic legislation, of which this is an example. *Romein v Gen Motors Corp*, 436 Mich 515, 525; 462 NW2d 555 (1990). The rational basis test considers whether the "classification itself is rationally related to a legitimate governmental interest." *Shavers, supra* at 554,

quoting *United States Dep't of Agriculture v Moreno*, 413 US 528, 533; 93 S Ct 2821; 37 L Ed 2d 782 (1973).  But the rational basis test does not test "the wisdom, need, or appropriateness of the legislation . . . ."  *Crego, supra* at 260.  We examine the purpose with which the legislation was enacted, not its effects: "That the accommodation struck may have profound and far-reaching consequences . . . provides all the more reason for this Court to defer to the congressional judgment unless it is demonstrably arbitrary or irrational."  *Duke Power Co v Carolina Envir Study Group*, 438 US 59, 83-84; 98 S Ct 2620, 57 L Ed 2d 595 (1978).  In discerning the purpose, we look to "any set of facts, either known or which could reasonably be assumed, even if such facts may be debatable."  *Harvey, supra* at 7.  Applying this law, we conclude that this statute, obviously designed to reduce insurance costs for automobile lessors, could have been seen as a measure that, because costs of operations are reduced, increases the number of providers from which Michigan consumers may choose, or even just to enhance automobile sales for our leading domestic industry as more lessors transact business in the state.  Moreover, as we are informed by a brief amicus curiae, the amendment of MCL 257.401, limiting lessor's liability removed Michigan from the small remaining minority of states that

still impose unlimited liability on automobile lessors. This could be seen as joining with other states in viewing vicarious liability as unwise public policy, at least in these circumstances. Thus, the legislation is rationally related to legitimate governmental interest.

Because MCL 257.401(3) satisfies the rational basis test, it does not violate the rights granted by the Equal Protection Clause of the Michigan Constitution.

V

Plaintiff also argues that MCL 257.401(3) violates her substantive due process rights under the Michigan Constitution, which provides in pertinent part that no person shall "be deprived of life, liberty or property, without due process of law . . . ." Const 1963, art 1, § 17. To analyze whether a plaintiff's due process rights have been violated, we determine "whether the legislation bears a reasonable relation to a permissible legislative objective." *Detroit v Qualls,* 434 Mich 340, 366-367 n 49; 454 NW2d 374 (1990). This is, in essence, the same test employed in the equal protection analysis, and we reach the same result. Therefore, because we find that MCL 257.401(3) does not violate plaintiff's rights under Michigan's Equal Protection Clause, we also find it does not violate her rights under Michigan's Due Process Clause.

**24**

By holding that damage caps legislation is permissible and inoffensive to the Constitution, we join many other states in reaching this conclusion. Some of the more well-written opinions include the Supreme Court of California, which stated in *Fein v Permanente Med Group*, 38 Cal 3d 137, 161; 695 P2d 665; 211 Cal Rptr 368 (1985), "[W]e know of no principle of California—or federal—constitutional law which prohibits the Legislature from limiting the recovery of damages in a particular setting in order to further a legitimate state interest." The Supreme Judicial Court of Massachusetts, in *English v New England Med Ctr, Inc*, 405 Mass 423, 427; 541 NE2d 329 (1989), held, "the personal, substantive right of a tort victim to recover damages is not a fundamental interest." (Quotation marks deleted.) The Supreme Court of Appeals of West Virginia similarly upheld damages caps in *Robinson v Charleston Area Med Ctr, Inc*, 186 W Va 720, 729; 414 SE2d 877 (1991), saying, "the 'rational basis' test for state constitutional equal protection purposes is applicable in this jurisdiction to . . . statutory limitation on remedies in certain common-law causes of action, such as statutory 'caps' on the recoverable amount of damages." The Supreme Court of Indiana, in *Johnson v St Vincent Hosp, Inc*, 237 Ind 374,

396; 404 NE2d 585 (1980), stated, concerning a similar statutory cap on damages, "It is not a presumption which prevents recovery of more than that amount, but the policy of the law in the statute.  The limitation is not a denial of due process on this basis."  The Supreme Court of Virginia, in *Etheridge,* 237 Va 95, 96, noted, "[A] remedy is a matter of law, not a matter of fact," and "although a party has the right to have a jury assess his damages, he has no right to have a jury dictate through an award the legal consequences of its assessment."

Reinforcing the findings of a majority of state supreme courts on this issue is the analysis of the United States Supreme Court that "statutes limiting liability are relatively commonplace and have consistently been enforced by the courts."  *Duke Power*, 438 US 88-89 n 32 (citations deleted).

What these courts have been unwilling to do is to usher in a new *Lochner*[15] era.  It was during that era when, for a time after the industrial expansion of the United States began in the mid-nineteenth century and, on the basis of strained constitutional interpretation, the United

---

[15] *Lochner v New York*, 198 US 45; 25 S Ct 539; 49 L Ed 937 (1905).

States Supreme Court threw out economic regulations that had been won in the political process. The central theme of the *Lochner* jurisprudence was, as Justice Peckham wrote of the ill-fated New York state effort to regulate the hours of bakers, "[A]re we all . . . at the mercy of legislative majorities?" *Id*. at 59. He and a majority of the Court concluded, "No."[16] Yet, by the mid-1930s, in *Nebbia v New York*, 291 US 502, 537; 54 S Ct 505; 78 L Ed 940 (1934), Justice Owen Roberts's majority opinion for the Court stated that "a state is free to adopt whatever economic policy may reasonably be deemed to promote public welfare . . . . With the wisdom of the policy adopted, . . . the courts are both incompetent and unauthorized to deal." From that time, economic regulation, such as the

---

[16] This case is taken as the signature case of this era, without doubt, because of the striking dissent of Justice Oliver Wendell Holmes, in which, regarding economic regulation, he famously said:

> This case is decided upon an economic theory which a large part of the country does not entertain. If it were a question whether I agreed with that theory I should desire to study it further and long before making up my mind. But I do not conceive that to be my duty, because I strongly believe that my agreement or disagreement has nothing to do with the right of a majority to embody their [sic] opinions in law. [*Lochner v New York*, 198 US 75 (Holmes, J., dissenting).]

measure we deal with today, has consistently been held to be an issue for the political process, not for the courts. Along with the noted jurisdictions, we are unwilling to turn our backs on this law. It is into this mainstream that we again steer our economic regulation jurisprudence.

We hold that the damages cap in MCL 257.401(3) is constitutional and does not violate plaintiff's rights to a jury trial, equal protection, or due process under the Michigan Constitution. Therefore, we affirm the decision of the Court of Appeals.

> Clifford W. Taylor
> Maura D. Corrigan
> Robert P. Young, Jr.
> Stephen J. Markman

**S T A T E   O F   M I C H I G A N**

**SUPREME COURT**

MARGARET PHILLIPS, PERSONAL REPRESENTATIVE
OF THE ESTATE OF REGEANA DIANE HERVEY,
Deceased,

    Plaintiff-Appellant,

v                                No. 121831

MIRAC, INC.,

    Defendant-Appellee.

_____

**WEAVER, J.** *(concurring in part and dissenting in part).*

I concur in the majority's conclusion that MCL 257.401(3), which caps the amount of a lessor's liability in motor vehicle leases of thirty days or less, does not violate plaintiff's constitutional rights to a jury trial,[1] equal protection,[2] or due process.[3] But I do so pursuant to my own reasoning, which is set forth below.

I dissent from the majority's conclusion that the right to trial by jury must be interpreted according to the meaning that those "learned in the law" would give the

---

[1] Const 1963, art 1, § 14.

[2] Const 1963, art 1, § 2.

[3] Const 1963, art 1, § 17.

phrase. Our primary rule of constitutional interpretation must be the common understanding that the people would have given the constitutional provision at the time of ratification, *not* the meaning that those "learned in the law" would give it.

### Facts and Proceedings Below

Plaintiff's decedent, Regeana Hervey, was killed in a car accident on October 27, 1997, when Da-Fel Reed, the driver of the car in which Ms. Hervey was a passenger, lost control of her vehicle and struck another vehicle. Ms. Reed had leased the car that she was driving from defendant Mirac, Inc., which does business as Enterprise Rent-A-Car. The parties stipulated that the lease was for a period of thirty days or less. Decedent's mother, plaintiff Margaret Phillips, sued Ms. Reed, as well as defendant. The suit against defendant was premised on the owner's liability statute, MCL 257.401.[4]

Before trial, the parties entered into an agreement that collection of a judgment against defendant Mirac, Inc., would exceed $20,000 only if MCL 257.401(3), which imposes a $20,000 cap on defendant's liability, were deemed unconstitutional. The parties further agreed that even if

---

[4] Ms. Reed is not a party to this appeal.

2

the cap were deemed unconstitutional, the maximum judgment to be entered on the verdict would be $250,000 and the minimum judgment to be entered on the verdict would be $150,000. Additionally, the agreement recognized that Ms. Reed was uncollectible, and plaintiff agreed that she would not seek entry of a judgment against Ms. Reed on any verdict.

Following a jury trial in November 1999, the jury found Ms. Reed negligent and awarded plaintiff $900,000 in damages. Plaintiff then requested that a judgment of $250,000 be entered against defendant Mirac, Inc., on the verdict, while defendant requested that a judgment of $20,000 be entered on the verdict. In determining which judgment to enter, the trial court concluded that MCL 257.401(3) was unconstitutional and entered a judgment against defendant for $250,000.

First, the trial court determined that the statute violated plaintiff's right to a jury trial. The trial court stated that the 1963 Constitution, court rule, and case law all provide for the right to a jury's assessment of damages and that this right must be preserved. Consequently, the Legislature could not impose a cap on the jury's assessment of damages and its attempt to do so in MCL 257.401(3) violated the constitutional right to have a

**3**

jury assess damages, as that right existed in 1929, before the ratification of Michigan's current Constitution in 1963. The trial court found more persuasive decisions from those states that had similarly concluded that damage caps violate the right to a jury trial. But the trial court did acknowledge that the Legislature could eliminate the owner's liability statute altogether.

Second, the trial court determined that the statute violated plaintiff's rights to equal protection under the law. The trial court reasoned that the right to a jury trial was a fundamental right and, therefore, required a strict scrutiny review. The trial court concluded that, because there was no compelling governmental interest in regulating Michigan's car rental industry, the statute failed the strict scrutiny test.

Third, the trial court concluded that the statute violated the constitutional right to due process for the same reasons that the statute violated the right to equal protection.[5]

_____

[5] The trial court also concluded that the statute did not violate the separation of powers doctrine. That issue is not before this Court.

4

Defendant appealed, and the Court of Appeals reversed in a two-to-one published opinion.[6] Addressing the right to a jury trial, the Court of Appeals majority held that the cap did not infringe plaintiff's right to trial by jury for two reasons. First, because the Legislature can abolish or modify common-law and statutory rights and remedies, it necessarily follows that it can limit the damages recoverable for a cause of action. Second, the statute does not infringe the jury's right to decide cases because the damages cap does not remove from the jury the determination of facts and amount of damages. The statute simply limits the amount of damages that can be recovered from a lessor of vehicles. Thus, the cap only limits the legal consequences of the jury's finding. 251 Mich App 590-595.

Next, the majority addressed whether the cap violates plaintiff's right to equal protection under the law. Because the statute at issue is social or economic legislation, the majority examined it under the rational basis test. The majority concluded that it was reasonable to assume that Michigan has a legitimate interest in the continued operation of automobile rental businesses and

_____

[6] 251 Mich App 586; 651 NW2d 437 (2002).

5

that protecting these businesses from large damage awards was rationally related to that purpose. Therefore, the statute did not violate plaintiff's equal protection rights. Similarly, because the tests for due process and equal protection are essentially the same, the cap also did not violate plaintiff's due process rights. *Id.* at 595-598.

The Court of Appeals dissenter would have held that the damages cap is unconstitutional because it violates the right to a jury trial. The dissenter explained that "[b]ecause our constitution confers a right to trial by jury, and because the right to trial by jury in Michigan extends to a determination of damages, the damages cap in the instant case is unconstitutional." *Id.* at 599. The statutory damages cap renders the jury's role illusory. While the Legislature may be free to abolish a cause of action, it may not abolish a right mandated by the Constitution. *Id.* at 600.

Plaintiff appealed and this Court granted leave to appeal, "limited to whether MCL 257.401(3) constitutes an unconstitutional denial of plaintiff's right to a jury trial, equal protection, or due process."[7]

---

[7] 468 Mich 941 (2003).

## Standard of Review

The constitutionality of a statute is a question of law that is reviewed de novo. *Tolksdorf v Griffith,* 464 Mich 1, 5; 626 NW2d 163 (2001). Statutes are presumed constitutional. This Court has stated:

> No rule of construction is better settled in this country, both upon principle and authority, than that the acts of a state legislature are to be presumed constitutional unless the contrary is shown; and it is only when they *manifestly* infringe some provision of the constitution that they can be declared void for that reason. In cases of doubt, every possible presumption, not clearly inconsistent with the language and the subject matter, is to be made in favor of the constitutionality of the act.

> The power in declaring laws unconstitutional should be exercised with extreme caution, and never where serious doubt exists as to the conflict . . . . These rules are founded in the best reasons; because, as suggested by my brother Manning, while the supreme judicial power may interfere to prevent the legislative and other departments from exceeding their powers, no tribunal has yet been devised to check the encroachments of that judicial power *itself.* [*Sears v Cottrell,* 5 Mich 251, 259-260 (1858)(emphasis in original).]

## Analysis

The statute at issue in this case, MCL 257.401, provides in part:

> (3) Notwithstanding subsection (1), a person engaged in the business of leasing motor vehicles who is the lessor of a motor vehicle under a lease providing for the use of the motor vehicle by the lessee for a period of 30 days or less is liable for an injury caused by the negligent

7

operation of the leased motor vehicle only if the injury occurred while the leased motor vehicle was being operated by an authorized driver under the lease agreement or by the lessee's spouse, father, mother, brother, sister, son, daughter, or other immediate family member. *Unless the lessor, or his or her agent, was negligent in the leasing of the motor vehicle, the lessor's liability under this subsection is limited to $20,000.00 because of bodily injury to or death of 1 person in any 1 accident and $40,000.00 because of bodily injury to or death of 2 or more persons in any 1 accident.* [Emphasis added.] [8]

### Right to a Jury Trial

Plaintiff asserts that MCL 257.401(3) violates art 1, § 14 of the Michigan Constitution, which provides:

The right of trial by jury shall remain, but shall be waived in all civil cases unless

---

[8] Subsection 1 of the statute provides:

This section shall not be construed to limit the right of a person to bring a civil action for damages for injuries to either person or property resulting from a violation of this act by the owner or operator of a motor vehicle or his or her agent or servant. The owner of a motor vehicle is liable for an injury caused by the negligent operation of the motor vehicle whether the negligence consists of a violation of a statute of this state or the ordinary care standard required by common law. The owner is not liable unless the motor vehicle is being driven with his or her express or implied consent or knowledge. It is presumed that the motor vehicle is being driven with the knowledge and consent of the owner if it is driven at the time of the injury by his or her spouse, father, mother, brother, sister, son, daughter, or other immediate member of the family. [MCL 257.401(1).]

8

> demanded by one of the parties in the manner prescribed by law. In all civil cases tried by 12 jurors a verdict shall be received when 10 jurors agree.

I disagree that the statute violates the right to a jury trial and find the Court of Appeals analysis on this point persuasive. But before explaining my rationale for concluding that the statute is constitutional, I wish to note my continued disagreement with rules of constitutional interpretation set forth in the majority opinion. Our primary rule of constitutional interpretation must be the common understanding that the people would have given the constitutional provision at the time of ratification, *not* the meaning that those "learned in the law" would give it. See, e.g., *Adair v Michigan,* 470 Mich 105, 143; ___ NW2d ___ (2004) (Weaver, J., dissenting in part and concurring in part); *Silver Creek Drain Dist v Extrusions Division, Inc,* 468 Mich 367, 382; 663 NW2d 436 (2003) (Weaver, J., concurring in part and dissenting in part). Therefore, on this important point, I dissent from the majority opinion.

First, as the Court of Appeals noted, the damages cap contained in MCL 257.401(3) does not violate plaintiff's right to a jury trial because the Legislature has the power under our Constitution to abolish or modify common-law and statutory rights and remedies. *Donajkowski v Alpena Power*

*Co,* 460 Mich 243, 256 n 14; 596 NW2d 574 (1999). Art 3, §

7 of the Michigan Constitution states:

> The common law and the statute laws now in force, not repugnant to this constitution, shall remain in force until they expire by their own limitations, or are changed, amended or repealed.

Where the Legislature can completely eliminate a cause of

action, it logically follows that the Legislature can also

take the less drastic step of limiting the damages

recoverable for a particular cause of action. See *Kirkland*

*v Blaine Co Med Ctr,* 134 Idaho 464, 468; 4 P3d 1115 (2000);

*Murphy v Edmonds,* 325 Md 342, 373; 601 A2d 102 (1992). In

other words, if the Legislature can completely eliminate an

owner's liability, it follows that it may take the less

drastic step of limiting an owner's liability.[9]

---

[9] The dissent acknowledges that the Legislature can repeal a statute, but then concludes that it cannot take the less drastic step of limiting the remedy provided by the statute because to do so abrogates a citizen's constitutional rights. *Post* at 4. This makes no sense. Before the enactment of MCL 257.401, an "owner of a motor vehicle was not liable for the negligence of a person to whom he had loaned it" unless the vehicle was used in operation of the owner's business. *Moore v Palmer,* 350 Mich 363, 392; 86 NW2d 585 (1957). It was only through the Legislature's enactment of MCL 257.401 that a cause of action against motor vehicle owners was created. If the Legislature can completely eliminate this cause of action that it created against the owner of a motor vehicle without violating the Constitution, it certainly may take the less drastic step of limiting the remedy for the cause of action it created.

Second, as the Court of Appeals also explained, MCL 257.401(3) does not violate plaintiff's right to a jury trial because the provision does not infringe the jury's right to decide the case. The jury still determines the facts and the damages incurred by plaintiff. It is only after the jury has done so that the cap is applied to limit liability. Thus, MCL 257.401(3) only limits the *legal* consequences of the jury's finding regarding the liability. As the Maryland Court explained in *Murphy, supra* at 373:

> The General Assembly, however, did not attempt to transfer what is traditionally a jury function to the trial judge. Instead, the General Assembly abrogated any cause of action for noneconomic tort damages in excess of $350,000; it removed the issue from the judicial arena. No question exists concerning the role of the judge versus the jury with respect to noneconomic damages in excess of $350,000. Therefore, no question concerning the constitutional right to a jury trial is presented.

I find it noteworthy that the limitation on damages in this case applies only to limit the *lessor's* liability. There is no cap on the damages that limits the liability of the lessee or operator of the vehicle. This distinction is recognized in MCL 257.401(4), which provides:

> A person engaged in the business of leasing motor vehicles as provided under subsection (3) shall notify a lessee that the lessor is liable only up to the maximum amounts provided for in subsection (3), and only if the leased motor vehicle was being operated by the lessee or other

**11**

authorized driver or by the lessee's spouse, father, mother, brother, sister, son, daughter, or other immediate family member, and *that the lessee may be liable to the lessor up to amounts provided for in subsection (3), and to an injured person for amounts awarded in excess of the maximum amounts provided for in subsection (3).* [Emphasis added.]

Thus, a plaintiff has the opportunity for a complete recovery against the party whom the jury has determined to be negligent—the lessee or operator of the vehicle, and this opportunity makes plaintiff's argument that the cap violates the right to a jury trial even less convincing.[10]

---

[10] The recognition of this possibility of recovery was relied on in a recent Florida case upholding the constitutionality of a similar Florida statute. The Florida Court explained:

> [Fla Stat 324.021, which limits the liability of short-term motor vehicle lessors] does not violate this section of the Florida Constitution by limiting plaintiff's right to trial by jury. Under this statute, a jury still retains the ability to fully assess all damages against those at fault. Section 324.021 merely limits a plaintiff's available damages from the owner of the vehicle. A plaintiff retains the ability to recover fully from the lessee or operator of the vehicle. [*Enterprise Leasing Co South Central, Inc v Hughes,* 833 So 2d 832, 838 (Fla App, 2002).]

I note that I do not consider the possibility of complete recovery from the negligent party to be a constitutional prerequisite for upholding a damages cap.

For these reasons, I conclude that MCL 257.401(3) does not violate plaintiff's right to a jury trial.

Equal Protection

Plaintiff also asserts that MCL 257.401(3) violates her right to equal protection under the law. Michigan's Equal Protection Clause provides in part, "No person shall be denied the equal protection of the laws . . . ." Const 1963, art 1, § 2. Equal protection challenges are reviewed using one of three levels of scrutiny: rational basis, heightened or intermediate scrutiny, and strict scrutiny. *Harvey v Michigan,* 469 Mich 1, 6-7; 664 NW2d 767 (2003). I disagree with plaintiff's contention that the statute at issue in the present case should be reviewed under a strict scrutiny standard because the right to a jury trial is a fundamental right. The strict scrutiny standard of review typically applies to laws in which classifications are based on "suspect factors" such as race, ethnicity, or national origin. *Id.* at 7. Social or economic legislation, on the other hand, is generally subject to review under the rational basis test. *People v Perlos,* 436 Mich 305, 332; 462 NW2d 310 (1990. Tort reform legislation, such as the statute in the present case, is typically treated as socioeconomic legislation that is

**13**

subject to rational basis review.  See *Stevenson v Reese,* 239 Mich App 513, 517-518; 609 NW2d 195 (2000).

The rational basis test considers whether the "classification itself is rationally related to a legitimate governmental interest."  *Id.*  But it does not test "the wisdom, need, or appropriateness of the legislation . . . ."  *Crego v Coleman,* 463 Mich 248, 260; 615 NW2d 218 (2000).  I agree with the Court of Appeals that

> this legislation passes that test because it can reasonably be assumed that Michigan has a legitimate interest in the continued operation of automobile rental businesses, and protecting those businesses from large damage awards in jury trials bears a rational relationship to that end. [251 Mich App 598.][11]

Because the statute satisfies the rational basis test, it does not violate the rights granted by the Equal Protection Clause.[12]

---

[11] The dissent makes much of the other measures that might have been taken by the Legislature to address the concerns of car rental companies. *Post* at 5-6, 8-9.  In my opinion, such analysis usurps the Legislature's role to weigh interests and policy considerations when enacting a statute.

[12] I note that had a majority of this Court in *Harvey*, not overruled the heightened scrutiny articulated in *Manistee Bank & Trust Co v McGowan,* 394 Mich 655; 232 NW2d 636 (1975),  consistently with my dissent in *Harvey,* I would have employed the "fair-and-substantial-relation-to-the-object-of-the-legislation" test from *Manistee Bank* when

(continued…)

**14**

## Due Process

Lastly, plaintiff argues that MCL 257.401(3) violates her due process rights.  The Michigan Constitution provides in pertinent part that no person shall "be deprived of life, liberty or property without due process of law." Const 1963, art 1, § 17.  The test for due process is "whether the legislation bears a reasonable relation to a permissible legislative objective."  *Shavers v Attorney General,* 402 Mich 554, 612; 267 NW2d 72 (1978).  This is essentially the same test employed in the equal protection analysis.  *Doe v Dep't of Social Services,* 439 Mich 650, 682 n 36; 487 NW2d 166 (1992).  Therefore, for the same reasons that MCL 257.401(3) does not violate the rights secured by the Equal Protection Clause, it also does not violate those secured by the Due Process Clause.

## Conclusion

I agree that the damages cap is constitutional and does not violate plaintiff's rights to a jury trial, equal

---

(…continued)
analyzing plaintiff's equal protection claim in this case. See *Harvey, supra* at 16-19 (Weaver, J., dissenting). However, even under this heightened scrutiny, I would have concluded that the statute is constitutional and does not violate plaintiff's equal protection rights.

protection, or due process.  Therefore, I concur in the result of the majority opinion, but under my own reasoning. I dissent from the majority's conclusion that the right to a jury trial must be interpreted according to the meaning that those "learned in the law" would give the phrase. Rather, our primary rule of constitutional interpretation must be the common understanding that the people would have given the constitutional provision at the time of its ratification.

Elizabeth A. Weaver

MARGARET PHILLIPS, PERSONAL REPRESENTATIVE
OF THE ESTATE OF REGEANA DIANE HARVEY,
DECEASED,

    Plaintiff-Appellant,

v                                    No. 121831

MIRAC, INC,

    Defendant-Appellee.

_____

CAVANAGH, J. *(dissenting).*

Michigan's Constitution provides our citizens with the right to trial by jury. Const 1963, art 1, § 14. Because I believe the right to a jury trial is a fundamental right that encompasses the right to have our citizens awarded damages based on the jury's determination and because I believe MCL 257.401(3),[1] the damages cap in this case,

---

[1] MCL 257.401(3), covering civil actions and the liability of a lessor of a motor vehicle, states the following:

> Notwithstanding subsection (1), a person engaged in the business of leasing motor vehicles who is the lessor of a motor vehicle under a lease providing for the use of the motor vehicle by the lessee for a period of 30 days or less is liable for an injury caused by the negligent operation of the leased motor vehicle only if the injury occurred while the leased motor vehicle

(continued…)

violates plaintiff's right to a jury trial, as well as plaintiff's equal protection and substantive due process rights, I respectfully dissent.

## I. THE CONSTITUTIONAL RIGHT TO A TRIAL BY JURY

"The right of trial by jury shall remain, but shall be waived in all civil cases unless demanded by one of the parties in the manner prescribed by law." Const 1963, art 1, § 14. "The right to jury trial in civil litigation is of constitutional dimension." *Wood v Detroit Automobile Inter-Ins Exchange*, 413 Mich 573, 581; 321 NW2d 653 (1982). The right to a jury trial is a fundamental right, "regarded as the great bulwark of the liberty of the citizen." *McRae v Grand Rapids*, L & D R Co, 93 Mich 399, 401; 53 NW 561 (1892); see also *People v Smith*, 383 Mich 576, 578; 177 NW2d 164 (1970) ("Trial by jury is a basic constitutional right.").

---

(…continued)
was being operated by an authorized driver under the lease agreement or by the lessee's spouse, father, mother, brother, sister, son, daughter, or other immediate family member. Unless the lessor, or his or her agent, was negligent in the leasing of the motor vehicle, the lessor's liability under this subsection is limited to $20,000.00 because of bodily injury to or death of 1 person in any 1 accident and $40,000.00 because of bodily injury to or death of 2 or more persons in any 1 accident.

The right to a jury trial also encompasses the right to have the jury determine damages. *Leary v Fisher*, 248 Mich 574, 578; 227 NW 767 (1929). In *Aho v Conda*, 347 Mich 450, 455; 79 NW2d 917 (1956), this Court stated that "the question of damages is fundamentally a jury question." In *Rouse v Gross*, 357 Mich 475, 481; 98 NW2d 562 (1959), this Court stated, "The right of trial by jury ordinarily refers to a right to present or defend an actionable claim to 1 jury to the point of jury verdict and judgment." See also *Rich v Daily Creamery Co*, 303 Mich 344, 349; 6 NW2d 539 (1942); *Sweeney v Hartman*, 296 Mich 343, 347; 296 NW 282 (1941).[2] It is perplexing, to say the least, that the

---

[2] While the majority uses a scholarly article written in the Harvard Law Review to support its position, I believe that cases decided by justices from this Court are more persuasive in determining the rights of Michigan citizens. The majority does cite two Michigan cases—*May v Goulding*, 365 Mich 143, 148-149; 111 NW2d 862 (1961), and *McClelland v Scholz*, 366 Mich 423, 426; 115 NW2d 120 (1962)—for the unremarkable proposition that a jury cannot decide an issue of law. However, the cases cited have nothing to do with the issue of the jury determining damages. *None* of the questions submitted to the jury in *May* and *McClelland* that were deemed improper by this Court had anything to do with damages.

I also vehemently disagree with the majority that "the right of trial by jury" is a "technical legal phrase" that is to be determined "as understood by those learned in the law at the time." *Ante* at 10. The primary rule of constitutional interpretation is "common understanding." *Macomb Co Taxpayers Ass'n v L'Anse Creuse Pub Schools*, 455 Mich 1, 6; 564 NW2d 457 (1997). "A constitution is made
(continued…)

3

majority argues that the damages cap does not implicate plaintiff's right to a jury trial. The majority argues that damages were "never within those things a jury can decide." *Ante* at 15. But a jury does decide damages. Merely because the majority deems a damages determination to be part of the "great mass of procedural forms and details," *ante* at 12, and not within the jury's purview, does not change the fact that part of the jury's historic role has been to determine damages. Thus, the damages cap invades the jury's role. Because of the $20,000 damages cap, when the amount of damages determined by the jury is over $20,000, the jury's determination is of no consequence. The right to a jury trial is illusory in the most severe cases, those in which the amount of damages exceeds $20,000. Surely, this illusory "right" does not comport with our citizens' constitutional right to trial by jury. The right to a jury trial is not satisfied by providing jurors the opportunity to announce an award and then have it arbitrarily ignored with no regard for the

_____

(…continued)
for the people and by the people. *The interpretation that should be given it is that which reasonable minds, the great mass of the people themselves, would give it."* *Id.,* quoting *Livingston Co v Dep't of Management & Budget,* 430 Mich 635, 642; 425 NW2d 65 (1988) (quoting Cooley's Const Lim 81) (quotation marks deleted).

facts of the case.  Our constitutional mandates certainly must be afforded more than mere lip service.  While the Legislature can change, amend, or repeal a statute, it cannot abrogate a citizen's constitutional right to trial by jury.  Because the damages cap is applied automatically, without regard to the jury's assessment of damages, the damages cap violates our citizens' constitutional right to trial by jury.

Because the right to a jury trial is a fundamental right, the damages cap must withstand strict scrutiny to be deemed constitutional.  *Doe v Dep't of Social Services*, 439 Mich 650, 662; 487 NW2d 166 (1992).  Under a strict scrutiny analysis, a statute will be upheld if it is precisely tailored to serve a compelling governmental interest.  Id.  In this case, the alleged "compelling" governmental interest that prompted the damages cap is the continued viability of the automobile rental industry.  The Legislature's response to the alleged crisis in the automobile rental industry was to restrict recovery for the most severely injured plaintiffs.  No matter the merits of the claim, the Legislature restricted a victim's damages, resulting in an arbitrary limit on the amount of damages a victim can recover.  This means that the victims who are the most severely injured will have their damages reduced

5

the most, while less seriously injured victims can fully recover. Even if one were to agree that a crisis existed and that such a crisis may be considered a compelling governmental interest, the Legislature's action was not precisely tailored. There were numerous other measures the Legislature could have taken, such as requiring automobile rental drivers to be insured, that would have addressed the alleged crisis while not making such a sweeping restriction to our citizens' fundamental right.

Notably, the Legislature's decision to limit the amount of recovery from the automobile rental industry makes the industry less accountable to the public, and it is the public's interests that are to be protected by the statute. Because of the damages cap, the industry has no incentive to ensure that drivers are insured. Assuming that the automobile rental industry was being held liable for damages that totaled such an amount as to threaten the viability of the industry, then the industry necessarily recognized that the number of uncollectible drivers was causing this problem. The simple solution would be to mandate that drivers are insured, thereby ensuring that victims would have a viable avenue by which to collect damages.

The concurrence asserts that a victim still has a cause of action to recover from the driver of the rented automobile. However, this alternate avenue of recovery belies reality. As discussed, there is no mandate requiring the automobile rental industry to ensure that rental drivers are insured. An automobile rental company can rent to an uninsured driver knowing that a severely injured victim would likely have no way to recover from the driver for any damages caused. Therefore, while the concurrence claims that this is an alternate avenue for recovery, in reality, this avenue is often a dead end.

Thus, because even a cursory review of other available measures indicates that the statute is not precisely tailored to serve a compelling governmental interest, it cannot withstand strict scrutiny. Therefore, the damages cap at issue is unconstitutional.

## II. EQUAL PROTECTION AND SUBSTANTIVE DUE PROCESS

Our Constitution states, "No person shall be denied the equal protection of the laws . . . ." Const 1963, art 1, § 2. Further, our Constitution provides, "No person shall . . . be deprived of life, liberty or property, without due process of law." Const 1963, art 1, § 17. The test to determine if legislation comports with substantive due process is essentially the same as the test used for

equal protection. *Shavers v Attorney General*, 402 Mich 554, 612-613; 267 NW2d 72 (1978). To resolve a due process or equal protection challenge, this Court must identify the objective that the challenged statute seeks to achieve. *O'Brien v Hazelet & Erdal*, 410 Mich 1, 13-14; 299 NW2d 336 (1980). The claimed objective of implementing the damages cap is to ensure the continued viability of the automobile rental industry. However, the entire statute's broader objective "is for the benefit of the public and the prevention of unrecompensed injury . . . ." *Miller v Manistee Co Bd of Rd Comm'rs*, 297 Mich 487, 493; 298 NW 105 (1941), overruled in part by *Mead v Michigan Pub Service Comm*, 303 Mich 168; 5 NW2d 740 (1942).

The statute at issue establishes several classifications, among them it distinguishes between victims who were injured by a motor vehicle and victims injured by a rented motor vehicle. Within this latter classification, the statute also distinguishes between those with severe injuries and those with lesser injuries. Because the classifications and the arbitrary damages cap impermissibly interfere with a fundamental right-the right to trial by jury-the legislation is reviewed by strict scrutiny. *Harvey v Michigan*, 469 Mich 1, 12; 664 NW2d 767 (2003). As explained in section one, the legislation

8

cannot withstand strict scrutiny because, even assuming a compelling governmental interest, it is not precisely tailored.

Further, even evaluating the damages cap under rational-basis review, it is highly suspect. To prevail under rational-basis review, it must be shown that the legislation is "'arbitrary and wholly unrelated in a rational way to the objective of the statute.'" *Id*. at 7, quoting *Smith v Employment Security Comm*, 410 Mich 231, 271; 301 NW2d 285 (1981). A classification reviewed under "[rational] basis passes constitutional muster if the legislative judgment is supported by any set of facts, either known or which could reasonably be assumed, even if such facts may be debatable." *Harvey, supra* at 7.

While a plaintiff bears a heavy burden to rebut the presumption that a statute is constitutional, it is not an insurmountable hurdle. Rational-basis review does not mean that, merely because a crisis is alleged by representatives of an industry, any action taken is a valid and constitutional one.

Regarding the damages cap at issue, there is no indication that past damages awards were threatening the automobile rental industry. Further, a concern over future damages awards and the viability of the automobile rental

industry is so tenuous that it is unable to withstand rational-basis scrutiny. Because the damages cap is arbitrary and not rationally related to a legitimate governmental objective, the damages cap violates plaintiff's equal protection and substantive due process rights. No matter the intentions of the Legislature, if a statute improperly contravenes the rights afforded our citizens by the Constitution, we must strike down that legislation.

III. THE CONSTITUTIONALITY OF DAMAGES CAP IN GENERAL

The damages cap in this case differs from other forms of remedies that affect damages awards, such as remittitur, additur, and treble damages. Remittitur, additur, and treble damages are based on the facts presented at trial. See *Moore v Spangler*, *401 Mich 360, 371, 373; 258 NW2d 34 (1977); Shepard* v Gates, 50 Mich 495, 497-498; 15 NW 878 (1883). Remittitur or additur is used only after a court has determined that a party has not received a fair trial because the verdict is clearly or grossly excessive or inadequate. The damages cap in this case, however, is an arbitrary amount that limits recovery regardless of the jury award or the facts presented at trial.

On a broader level, the impetus behind damages caps is that they are necessary to ensure that certain defendants

are not driven out of business by runaway jury verdicts. However, our justice system has numerous mechanisms to ensure that verdicts are just. Summary disposition, directed verdict, judgment notwithstanding the verdict, and remittitur are all readily available mechanisms to make certain that verdicts are fair. And, of course, our nation's centuries-old jury system was designed to ensure a fair trial for all parties. While I do not contend that a damages cap can never be constitutional, we must not blindly accept claims of a crisis made by those who have a distinct interest in seeing liability limited.

Other jurisdictions have also held that damages caps applied to various causes of actions are unconstitutional. In *Kansas Malpractice Victims Coalition v Bell*, 243 Kan 333, 342, 345-346; 757 P2d 251 (1988), overruled in part by *Bair v Peck*, 248 Kan 824; 811 P2d 1176 (1991), the Kansas Supreme Court stated that when the trial court enters judgment for less than the jury verdict, it "is an infringement on the jury's determination of the facts, and, thus, is an infringement on the right to a jury trial." The court further stated:

> Pain and suffering have no known dimensions, mathematical or financial. There is no exact relationship between money and physical or mental injury or suffering, and the various factors involved are not capable of proof in dollars and

11

cents. For this very practical reason the only standard for evaluation is such amount as reasonable persons estimate to be fair compensation for the injuries suffered, and the law has entrusted the administration of this criterion to the impartial conscience and judgment of jurors, who may be expected to act reasonably, intelligently and in harmony with the evidence. [*Bell* at 346, quoting *Domann v Pence*, 183 Kan 135, 141; 325 P2d 321 (1958).]

In *Morris v Savoy*, 61 Ohio St 3d 684, 690; 576 NE2d 765 (1991), the Ohio Supreme Court found no rational relationship between a medical malpractice damages cap and public health or welfare, and further held that the cap was unreasonable and arbitrary. Numerous other cases have also held that damages caps are unconstitutional. See also *Best v Taylor Machine Works*, 179 Ill 2d 367, 409; 689 NE2d 1057 (1997) (for a list of jurisdictions); *Tenold v Weyerhaeuser Co*, 127 Ore App 511, 524-525; 873 P2d 413 (1994); *Henderson v Alabama Power Co*, 627 So 2d 878, 891 (Ala, 1993), overruled in part *Ex parte Apicella*, 809 So 2d 865 (Ala, 2001) ("[I]t is improper for the legislature to substitute itself for the jury and to fix an arbitrary, predetermined limit" on the jury's award.); *Brannigan v Usitalo*, 134 NH 50, 57; 587 A2d 1232 (1991); *Sofie v Fibreboard Corp*, 112 Wash 2d 636, 638; 771 P2d 711 (1989); *Condemarin v Univ Hosp*, 775 P2d 348, 364 (opinion by Durham, J.), 367 (Zimmerman, J., dissenting in part and concurring in part)

12

(Utah, 1989); *Lucas v United States*, 757 SW2d 687, 690-691 (Tex, 1988); *Coburn v Agustin*, 627 F Supp 983, 996-997 (D Kan, 1985); *Carson v Maurer*, 120 NH 925, 940-941, 943-944; 424 A2d 825 (1980) ("It is simply unfair and unreasonable to impose the burden of supporting the medical care industry solely upon those persons who are most severely injured and therefore most in need of compensation."); *Arneson v Olson*, 270 NW2d 125, 126, 135 (ND, 1978); *Wright v Central DuPage Hosp Ass'n*, 63 Ill 2d 313, 329-330; 347 NE2d 736 (1976).[3]

The breadth of decisions from jurisdictions around our nation should give us pause before we allow dubious allegations to erode our citizens' constitutional rights. No industry should be allowed to shift its burden of responsibility and accountability to the shoulders of the severely injured merely because it claims to be in crisis.

---

[3] Although many of these deal with damages caps in medical malpractice cases, the fact that the caps have been deemed unconstitutional is relevant to the issue in this case. The medical "crisis" that has led to medical malpractice damages caps being enacted has received much more study than the alleged crisis in the automobile rental industry. Yet, as the above cases indicate, numerous jurisdictions have rejected the arguments that the damages caps are constitutional or necessary.

## IV. CONCLUSION

Thomas Jefferson considered trial by jury to be "the only anchor ever yet imagined by man, by which government can be held to the principles of its constitution."[4] Today, the majority casts our citizens adrift by finding their constitutional rights are expendable merely because of an alleged "crisis" in the automobile rental industry. The majority merrily "steer[s] our economic regulation jurisprudence," *ante* at 28, into the mainstream, while ignoring the citizens who are severely injured along the way. Therefore, I must respectfully dissent. I would reverse the decision of the Court of Appeals because the damages cap violates plaintiff's fundamental right to a jury trial, as well as plaintiff's equal protection and substantive due process rights.

> Michael F. Cavanagh
> Marilyn Kelly

---

[4] Thomas Jefferson, Letter to Thomas Paine, July 11, 1789. Wulffrith's Quotations, <http://geocities.com/wulffrith_47/Quotes_tj.html> (accessed May 20, 2004).