GREEN *v*. DETROIT UNITED RAILWAY.

1. EVIDENCE—WEIGHT OF EVIDENCE—ESTABLISHING CASE.
   In an action against a street railway company for personal injuries, where defendant pleaded the general issue, it was incumbent upon plaintiff to establish her case to the satisfaction of the jury, and although her testimony was undisputed, where it failed to convince the jury, the verdict will not be set aside as contrary to the great weight of the evidence.

2. TRIAL — REMARKS OF COUNSEL — EVIDENCE — REASON FOR NOT CALLING WITNESS.
   Remarks by defendant's counsel, in his opening statement, that the car crew filed no report of the accident, and the introduction of testimony to the same effect, *held*, not error, where the purpose was to explain defendant's reason for not calling witnesses, and was limited by the trial court to that purpose.

Error to Wayne; Wiest (Howard), J., presiding. Submitted January 20, 1920. (Docket No. 79.) Decided April 10, 1920.

Case by Jennie B. Green against the Detroit United Railway for personal injuries. Judgment for defendant. Plaintiff brings error. Affirmed.

*Max Hulett*, for appellant.

*Corliss, Leete & Moody* and *A. B. Hall*, for appellee.

STEERE, J. Plaintiff alleged in her declaration that she sustained serious personal injuries through defendant's negligence in suddenly starting one of its trailer cars while she was attempting to board it as a passenger at the intersection of Grand River avenue and Bagg street, Detroit, on the evening of June 27, 1917. Defendant made denial by a plea of the general

issue. Trial was had by jury in the circuit court of Wayne county, commencing October 29, 1918. The controlling questions in the case were issues of fact. These were submitted to the jury under an adequate charge as to the duties of defendant, issues of fact within the province of the jury to decide, measure of damages in case a verdict was awarded plaintiff and other applicable principles of law by which the jury should be governed in passing upon and deciding the disputed facts. A verdict was rendered for defendant. Motion was made by plaintiff for a new trial on various grounds and denied.

The testimony plaintiff offered in support of her claim was in outline that when injured she was going from her home on Fourth avenue accompanied by her granddaughter to the home of a married daughter at No. 64 Avery avenue, where they had been invited to dinner; that some time before 6 o'clock the two walked down Bagg street to Grand River avenue to take a north-bound car; the first which came along had a trailer, was somewhat crowded and made its stop a little past where they were standing; that the doors to the trailer were open, a few passengers got off and while the car was standing she attempted to board the trailer and "got on at the entrance door"; that as she got one foot on the floor and "reached to catch hold of the frame" the car started quickly and a man seized her wrist and held her from falling, and she was carried to the next stopping place in a cramped position with the man holding her wrist and her left foot dragging, during which perilous ride she stated:

"I pleaded all the time to stop the car. When the car stopped at the next street, the man—he eased me down onto the floor, or onto the street—I asked him if he would please get off with me. He just eased me down and left me standing there. The car went on."

And on cross-examination she testified:

"The car started so quick I couldn't get fully on. Half of me was dragging and the other half was standing on the steps—the right foot. I was dragging my foot on the ground. I didn't go clear down on the step. The gentleman hung onto this wrist (indicating) right in plain view of the conductor—he was right in front of me. I pleaded to him to stop the car. He carried me two blocks in that position."

The granddaughter, a grown girl, testified of the incident:

"Grandmother started to get on the car before I had a chance. Whether she was fully on the car or not I don't know, but before I had a chance to get on the car it started up. * * * Just then a gentleman came up, he saw the situation—saw me standing there. I didn't look directly after the car just then. * * * The car had gone half a block before I discovered my grandmother. * * * I saw my grandmother dragging — one foot dragging. She had one arm onto something and this foot (indicating) was dragging, and her dress was sweeping like that (indicating) on the road. * * * And they let her off the car and I ran down to where she was. She was standing in the safety zone. From where the car left me, I should judge it was about a block and a half away. * * * We started up to my aunt's. It took us quite a long time to get there. I had to hang onto her. She did walk, with my assistance. * * * I should say it is about seven blocks and a half—without counting them, from the place where my grandmother got off the car to my aunt's house."

On cross-examination she testified in part as follows:

"The car was out of my sight when it started up. When the car started up so quick I could not tell how soon the door closed. It didn't close it all—it went two blocks without closing; my grandmother with her clothes sticking out and her foot dragging on the ground. I stood there a minute. It didn't take the car a minute to go up there. * * * I thought my grandmother was trying to step off to wait for me. I thought she made an attempt to get off the car while the car was going. I thought it was her own actions

\* \* \* I don't know what she decided to do when she saw me left there. \* \* \* She didn't wait very long for me."

She also stated that a man who noticed she was left offered her a ticket which she refused and said:

"The gentleman saw my grandmother being dragged along the ground later. I didn't take his name. I didn't take the number of the car. \* \* \* When my grandmother got up to the first stop she got off. \* \* \* It didn't take very long for me to get up there. The gentleman didn't go up there."

After arrival at her daughter's home plaintiff took dinner with the others, as they relate, but complained of having been hurt in the accident, of which she told, and after their meal lay down on a couch for a time and started home between 8 and 9 o'clock with her granddaughter and another woman who was there that evening, walking a block and a half to the street car line. Her daughter testified that when her mother first arrived she was crying and seemed very nervous, complaining of having been dragged by a car and hurt, but she did not think her seriously injured. Her son-in-law testified he did not telephone for a taxi or go home with her as the two other guests accompanied her when she left, saying:

"I didn't think much of it at the time—any more than I thought she was scared and I thought she could get along all right. Of course her granddaughter and Miss Brown were along with her; I didn't think it was very serious."

Plaintiff's testimony was to the effect that it proved to be very serious; that she suffered in various ways from the result of the accident, was confined to her bed at home and in a hospital for a long time, was compelled to employ physicians, had not at the time of the trial fully recovered and was permanently injured. Dr. Hart, her family physician, testified that

he was called to attend her a few days after June 27th and found her in bed and attended her until some time the following January when she was taken to a hospital for treatment. He diagnosed her trouble as "traumatic neuritis," which in his opinion resulted from the accident, of which she told him. Dr. Armstrong, who thereafter attended her, stated that his first visit was made the latter part of January and he "found she had what we call galthosis or inflammation of the gall bladder and ulcer of the stomach." He testified that the accident as related to him would in all probability contribute largely to that condition and said in explanation, "It might be the sole cause of the trouble, but no medical man could swear that was the cause."

After plaintiff rested, defendant's counsel in his opening statement to the jury said:

"This is a case where we are somewhat handicapped for witnesses from the fact we have no report of the accident. It was an accident which was never reported to the company until after they had already instituted suit, that such an accident had happened. We are unable to contradict with testimony, or any positive testimony, because there is no way of producing the conductor or motorman of that car. We will show, though, that the lady had an accident on a former trial; that she settled with the company on the very day of the accident; that she had the number of the car, the number of the conductor and the number of the motorman on that occasion. We will show you by a physical examination that there is nothing now to indicate, by an examination of the doctor, what this lady's trouble is outside of the ulcers the doctor testified to the other day. As I said before, it is impossible for us to produce any testimony on the alleged accident because, as I say, there is no report."

To which counsel for plaintiff interposed the objection "that any reports made to the company would be absolutely incompetent, and were they introduced

would be prejudicial." This objection was overruled and the defense then called a witness named McDonald who was in the employ of defendant in its claim department. in charge of its records, and testified to searching its files and records in the case of Jennie B. Green *v.* the Detroit United Railway. The following question was then asked:

"*Q.* I ask you whether you have been able to find in the files of the company, pertaining to this, or any place, the record of any report of this accident by any motorman or conductor?"

To this inquiry plaintiff's counsel renewed his former objection, which the court overruled on the theory that "they have the right to show they are unable to locate witnesses," and the witness answered: "I have found no record of any such accident." Of which the court then said: "This is not to be considered as substantive proof that no accident occurred."

The only other witness called by the defense was Dr. Povey who had made an examination of plaintiff and testified the only subjective indication of physical trouble he could find was an enlargement of the liver which might be caused by gall stones, and is usually due to an infection of the gall duct from the intestines as a direct connection; and that there were no objective symptoms of other conditions of which she complained.

The questions raised by plaintiff's assignments of error, as stated in her counsel's brief, are as follows:

"(1) That the verdict was contrary to the overwhelming weight of evidence.

"(2) That it was prejudicial error to permit defendant's counsel, in his opening statement to the jury, to state that the accident had never been reported to the company by the plaintiff until after suit was commenced.

"(3) That it was prejudicial error to permit defendant's counsel to show that the car crew had filed no report of the accident with the company."

Upon the first proposition counsel points out that defendant produced no witnesses as to the accident and plaintiff's testimony stands undisputed. It was nevertheless incumbent upon her to establish her case to the satisfaction of the jury. Her only witnesses to the accident were herself and her granddaughter. With the burden of proof resting upon her to convince the jury that the accident occurred as claimed, that it was imputable to the negligence of the conductor as charged and that she was without negligence on her part, defendant had the right in denial to stand upon the claimed improbability and inadequacy of her story to that end, and to argue to the jury its lack of convincing force as told by her and her granddaughter. The trial judge and jury both heard and saw the witnesses. In denying plaintiff's motion for a new trial the court said:

"This is not a case of the verdict being against the weight of evidence, but one in which the plaintiff failed in making a case."

The facts were not conceded. The testimony was for the jury to pass upon. As to that function, judges cannot draw conclusions from it for them.

"It is said that on some points there was no evidence of a conflicting nature; but that does not aid the claimant. A jury may disbelieve the most positive evidence, even when it stands uncontradicted; and the judge cannot take from them their right of judgment." *Woodin* v. *Durfee,* 46 Mich. 424.

To like effect, *vide Yonkus* v. *McKay,* 186 Mich. 203 (Ann. Cas. 1917E, 458) ; *Schweitzer* v. *Bird,* 204 Mich. 333; *Rotter* v. *Railway,* 205 Mich. 213; *Crampton* v. *Crampton,* 205 Mich. 233. We find no occasion to say, against the conclusions of the jury and trial court, that the verdict was perverse or contrary to the great weight of evidence.

Directed to the opening statement of defendant's

counsel in excuse for nonproduction of eyewitnesses and permitted testimony that the car crew filed no report of the accident, prejudicial error is urged under the rulings of this court in *Winnett* v. *Railway,* 171 Mich. 629 (Ann. Cas. 1914B, 1224), and *Sibert* v. *Railway,* 198 Mich. 117.

While similar in certain particulars, so far as relates to negative testimony that no reports were made, the question discussed in those cases was more particularly the right of defendant to resort to the expedient of proving absence of such reports as substantive proof against the *res gestæ* at issue, or fact of an accident. It was not permitted for such purpose here. In the court's reasons for not granting a new trial in the instant case it is said:

"The court expressly warned the jury that the testimony that no report of the accident was made to the company could not be considered upon the question as to whether an accident happened, but only to show the defendant claimed that reason for not calling its servant complained of."

In the *Winnett Case* the court pointed out that the testimony was obviously introduced and admitted to show that the accident did not occur as claimed by plaintiff. The conductor and motorman of the car were identified and produced as witnesses. They testified to no knowledge of an accident as plaintiff claimed. Defendant sought to strengthen their testimony by showing that they made no report of any such accident. The court said:

"It would, indeed, be a strange rule of evidence which would admit a private book or record to show that an event did not take place, when the witnesses upon whom the record depended for its existence and accuracy could be and were present in court as witnesses."

The authorities cited in that case to the proposition that "as a general rule, private books and records are

not evidence of what they do not contain," involved the competency of such testimony when directed as substantive proof to the *res gestæ* or controlling question at issue. As admitted here, the absence of a report was but indirectly relevant and admitted only as explanatory of defendant's failure to produce an apparently material witness in its employ.

In the *Sibert Case* reference is made to the holding in the *Winnett Case* that the books of defendant were not admissible to show that no report of the accident had been made and thereby prove an injury was not received as plaintiff claimed. It is also pointed out that in the case under consideration plaintiff's counsel over repeated objections "placed before the jury, not by the testimony of any witness, but by assertion, the fact that no report of the alleged injury had been made to defendant." The conduct of defendant's counsel in certain cross-examination of a witness is noted as "of very doubtful propriety," and a quoted discourse of the court is held calculated to "prejudice the plaintiff," for which reasons the conclusion was reached by the court that plaintiff had been deprived of a fair and impartial trial.

It is a well-recognized rule that a litigant's failure to call a supposedly available and friendly witness may be urged by counsel in argument and considered by the jury as raising a legitimate inference adverse to the party so failing, in the absence of satisfactory explanation, and either litigant is at liberty so far as any such inference may affect him to explain or show that the witness' absence is unavoidable, not his fault, and that he has made every reasonable effort to find such witness and procure his attendance. Naturally such explanatory evidence to be admissible need have no direct bearing on the *res gestæ* or any substantive fact in the case, and usually does not.

In *Dykstra* v. *Railway Co.*, 165 Mich. 13, comments

of plaintiff's counsel to the jury on failure of defendant to call a witness to contradict certain of plaintiff's testimony was said not to be error:

"Because it is proper in a civil case to comment on the omission of an adverse party to call witnesses in its employ upon a subject peculiarly within their knowledge."

And in *Phillips* v. *Benevolent Society*, 120 Mich. 142, it was said:

"In his opening statement to the jury, counsel for plaintiff said: 'I am not going to produce Dr. Le Seure, because we do not feel able to produce him.' We see no objection to this statement. It was competent for the plaintiff to show that he could not produce a material witness, and to show the reason therefor."

In *McDonald* v. *Railway Co.*, 144 Mich. 379, it was even held that testimony explaining the failure to call a witness on a former trial was admissible.

Plaintiff's comment that the purpose of defendant's counsel was to get the fact of the absence of the report before the jury to use as substantive proof in negation of the accident is upon the record but surmise. The court made plain that it was only admitted as collateral, explanatory evidence for its bearing on defendant's failure to call its employees to whose negligence the accident was directly charged. It was the duty of the court to see that no other use of this evidence was attempted. The record does not disclose that there was. It does not contain the arguments of counsel to the jury, but discloses no objection to any assertion or argument of defendant's counsel upon the subject other than those stated, nor any request to charge the jury upon that point. Limited to its legitimate purpose, as is to be assumed it was, its explanatory value as an inferable excuse for defendant not calling its employees as witnesses was de-

batable and might well be urged as vulnerable on this record as it stands, but for that purpose it was permissible within the field of inference and for the jury to consider, limited to any significance which it might have as an attempted explanation to meet a permissible unfavorable inference. The real and important issue in the case, as the court plainly emphasized to the jury, was whether the accident happened to plaintiff as and with the result she claimed.

We think that issue was fairly submitted to the jury whose province it was to decide it.

The judgment is affirmed.

MOORE, C. J., and BROOKE, FELLOWS, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.