TAYLOR, J.
In this case, we granted leave to appeal to consider whether MCL 257.401(3), which caps the amount of a lessor’s liability in motor vehicle leases of thirty days or less, violates plaintiffs rights under the Michigan Constitution to a jury trial,[1] equal protection,[2] or due process.[3] We hold that this damages cap does not implicate plaintiffs right to a jury trial, and does not violate her rights to equal protection or due process. Therefore, we affirm the Court of Appeals decision that the statute is constitutional.
i
Regeana Diane Hervey died in an automobile accident while a passenger in a vehicle being driven by Da-Fel Reed. Reed had leased the vehicle from Mirac, *420 doing business as Enterprise Rent-A-Car. Margaret Phillips, decedent’s mother and the personal representative of decedent’s estate, initiated a lawsuit against Mirac on the basis of MCL 257.401(3).[4] Generally, MCL 257.401(3) establishes vicarious liability for automobile lessors when permissive users, such as Reed, are negligent and cause automobile accidents injuring others. The act also caps the damages for such lessors at $20,000 for each injured person to a maximum of $40,000 for each accident.
While reserving for resolution the constitutionality of the damage caps, the parties before trial executed a “high-low” agreement for a $150,000 minimum award and a $250,000 maximum award. The jury returned a verdict of $900,000 against Mirac. This would, of course, have been reduced to $250,000 pursuant to the high-low agreement, unless the statutory damage caps were constitutional, in which case the damages would be reduced to $20,000.
The trial court concluded that the damage caps were unconstitutional on the basis that the statute, in capping damages, violated the right of trial by jury found in art 1, § 14 of the Michigan Constitution. The essence of its holding was that the right of jury trial includes the right of having a jury not only determine damages, but that the jury’s determination cannot be altered by the Legislature or courts. The trial court also concluded that the statute violated the Michigan Constitution’s provision that guarantees to citizens equal protection of the laws.[5] That is, that it impermissibly causes similarly situated litigants to be treated differently. Using the same reasoning, the trial court concluded that the *421 statute also violates the Michigan Constitution’s guarantee of due process of law.[6]
On appeal, the Court of Appeals reversed in a two-to-one opinion.[7] The majority determined that the cap did not infringe plaintiffs right to trial by jury for two reasons. First, because the Legislature can abolish or modify common-law and statutory rights and remedies, it necessarily follows that it can limit the damages recoverable for a cause of action. Second, it decided that the statute does not infringe the right to a jury trial because the damages cap does not remove from the jury the determination of facts and amount of damages. The statute simply limits the amount of damages that can be recovered from a lessor of vehicles. Thus, the cap only limits the legal consequences of the jury’s finding. 251 Mich App at 590-595.
Therefore, having determined that the cap did not implicate any fundamental right, the majority analyzed whether the cap violates plaintiffs right to equal protection under the rational basis test. The majority concluded that “it can reasonably be assumed that Michigan has a legitimate interest in the continued operation of automobile rental businesses, and protecting those businesses from large damages awards injury trials bears a rational relationship to that end.” Id. at 598. Therefore, the statute did not violate plaintiffs equal protection rights. Similarly, because the tests for due process and equal protection are essentially the same, the cap also did not violate plaintiffs due process rights. Id. at 598.
The Court of Appeals dissent would have held that the damages cap is unconstitutional because it violates *422 the right to a jury trial. The dissent explained that “[bjecause our constitution confers a right to trial by jury, and because the right to trial by jury in Michigan extends to a determination of damages, the damages cap in the instant case is unconstitutional.” Id. at 599. Thus, the statutory damages cap renders the jury’s role illusory. The dissent stated that the Legislature may be free to abolish a cause of action, but it may not abolish a right mandated by the Constitution. Id. at 600.
This Court granted plaintiffs application for leave to appeal, “limited to whether MCL 257.401(3) constitutes an unconstitutional denial of plaintiffs right to a jury trial, equal protection, or due process.”[8]
n
When construing a constitutional provision, we must give the words their plain meaning if they are obvious on their face. “If, however, the constitutional language has no plain meaning, but is a technical, legal term, we are to construe those words in their technical, legal sense.” Silver Creek Drain Dist v Extrusions Div, Inc, 468 Mich 367, 375; 663 NW2d 436 (2003); Michigan Coalition of State Employee Unions v Civil Service Comm, 465 Mich 212, 222-223; 634 NW2d 692 (2001), quoting 1 Cooley, Constitutional Limitations (8th ed), p 132.
The constitutionality of a statute is a question of law that is reviewed de novo. Tolksdorf v Griffith, 464 Mich 1, 5; 626 NW2d 163 (2001). Statutes are presumed constitutional. We exercise the power to declare a law unconstitutional with extreme caution, and we never exercise it where serious doubt exists with regard to the conflict. Sears v Cottrell, 5 Mich 251, 259 (1858); accord, *423 Taylor v Gate Pharmaceuticals, 468 Mich 1, 6; 658 NW2d 127 (2003). “Every reasonable presumption or intendment must be indulged in favor of the validity of an act, and it is only when invalidity appears so clearly as to leave no room for reasonable doubt that it violates some provision of the Constitution that a court will refuse to sustain its validity.” Cady v Detroit, 289 Mich 499, 505; 286 NW 805 (1939).
in
The statute at issue in this case, MCL 257.401, provides in part:
(3) Notwithstanding subsection (1), a person engaged in the business of leasing motor vehicles who is the lessor of a motor vehicle under a lease providing for the use of the motor vehicle by the lessee for a period of 30 days or less is hable for an injury caused by the negligent operation of the leased motor vehicle only if the injury occurred while the leased motor vehicle was being operated by an authorized driver under the lease agreement or by the lessee’s spouse, father, mother, brother, sister, son, daughter, or other immediate family member. Unless the lessor, or his or her agent, was negligent in the leasing of the motor vehicle, the lessor’s liability under this subsection is limited to $20,000.00 because of bodily injury to or death of 1 person in any 1 accident and $40,000.00 because of bodily injury to or death of 2 or more persons in any 1 accident. [Emphasis added.][9]
*424 Thus, this statute imposes on a motor vehicle lessor vicarious liability for bodily injury or death resulting from the negligence of the lessee (or a listed member of the lessee’s family). The statute, however, sets upper limits on that vicarious liability in the amounts of $20,000 for each person and $40,000 for each accident.
The Michigan Constitution states that:
The right of trial by jury shall remain, but shall be waived in all civil cases unless demanded by one of the parties in the manner prescribed by law. [Const 1963, art 1, §14.]
At issue is whether this constitutional provision makes what the Legislature attempted to do—cap damages even though a jury found that the damages were greater than the cap—unconstitutional. That is, does MCL 257.401(3) unconstitutionally infringe the right of trial by jury?
The first step in our analysis is to identify the scope of the right as enumerated in the Constitution. Our Constitution from the time of statehood has had a provision concerning the right of jury trials. In its earliest form, the right was expressed in Const 1835, art 1, § 9: “The right of trial by jury shall remain inviolate.” This was changed somewhat by Const 1850, art 6, § 27: “The right of trial by jury shall remain, but shall be deemed to be waived in all civil cases unless demanded *425 by one of the parties in such manner as shall be prescribed by law.” This language was unchanged in Const 1908, art 2, § 13, and the 1963 Constitution did not change the substance but only updated the language slightly. As can be seen, we have had virtually the same provision in our Constitution throughout our history and the nub of our inquiry must be, then, what does it mean to say “the right of trial by jury shall remain”?
This Court, speaking through Justice THOMAS M. COOLEY addressed this in 1880, saying:
The Constitution of the State provides that ‘The right of trial by jury shall remain, but shall be deemed to be waived in all civil cases, unless demanded by one of the parties in such manner as shall be prescribed by law.’ Article vi. § 27. The right is to remain. What right? Plainly the right as it existed before; the right to a trial by jury as it had become known to the previous jurisprudence of the State. [Swart v Kimball, 43 Mich 443, 448; 5 NW 635 (1880) (emphasis in original).]
What is to be taken from this is that to determine what this phrase, “the right of trial by jury shall remain,” means, one must look to the jurisprudence of the state. That is, this phrase is a technical legal phrase with the meaning those understanding the jurisprudence of this state would give it. As we said in Michigan Coalition, supra at 223, drawing on Justice Cooley’s method of analysis, in construing technical legal terms used in a constitution, “we must suppose these words to be employed in their technical sense.” Quoting Constitutional Limitations, supra. It is this technical legal meaning that the ratifiers of the 1963 Constitution are held to have adopted. We thus must look for the. meaning of “the right of trial by jury” before 1963, as understood by those learned in the law at the time. *426 See Conservation Dep’t v Brown, 335 Mich 343, 346; 55 NW2d 859 (1952).
Considerable insight into this scope of this right, both historically and as it was understood in the first half of the twentieth century, is provided in the encyclopedic article on this issue in the 1918 Harvard Law Review by Harvard Law professor Austin Wakeman Scott, Trial by jury and the reform of civil procedure, 31 Harv L R 669 (1918). While, not surprisingly, Professor Scott found certain elements to have long been regarded as of the “essence” of trial by jury, such as unanimity, impartiality, and competence of the jury, id. at 672-674, he also found that the only matters “properly within the province of the jury” are questions of fact. Id. at 675. All other questions, being questions of law, are for the court. Id. at 677.[10] Professor Scott’s article served as the bedrock for the United States Supreme Court decision, Tull v United States, 481 US 412; 107 S Ct 1831; 95 L Ed 2d 365 (1987), in which the Court discussed these concepts and concluded that the jury was confined to finding facts and that law was for *427 the courts and, moreover, that falling within the ambit of law was the assessment of civil penalties. As the Court said, “The assessment of civil penalties thus cannot be said to involve the ‘substance of a common-law right to a trial by jury,’ nor a ‘fundamental element of a jury trial.’ ” Tull, supra at 426. This holding in Tull was not unexpected because it followed a similar holding in Galloway v United States, 319 US 372, 392; 63 S Ct 1077; 87 L Ed 1458 (1943), in which the Court opined that, as expressed in the United States Constitution, the right of trial by jury extends only to “its most fundamental elements, not the great mass of procedural forms and details . . ..”
No other understanding of the proper area for juries to exercise power can be found in Michigan jurisprudence. In 1962, in deciding McClelland v Scholz, 366 Mich 423, 426; 115 NW2d 120 (1962), the Court found unexceptional a court rule that required juries to decide questions that relate “only to material issues of fact,” a finding that the Court could not have reached had the rule breached the “right of trial by jury” provision in the 1908 Constitution. Moreover, this approach echoed a similar earlier holding in May v Goulding, 365 Mich 143, 148-149; 111 NW2d 862 (1961). Further, in giving an overview of the area of the law in 1994, this Court held: “Juries traditionally do not decide the law or the outcome of legal conflicts.... To maintain the traditional role of the jury, the jury must remain the fact-finder; a jury may determine what happened, how, and when, but it may not resolve the law itself.” Charles Reinhart Co v Winiemki, 444 Mich 579, 601; 513 NW2d 773 (1994).
It is clearly the case that, at the time of the drafting and ratification of the 1963 Constitution, those sophisticated in the law understood, and thus the instrument adopted, that the right of trial by jury encompassed a *428 jury that could find facts, including the amount of damages. See, e.g., Wood v Detroit Automobile Inter-Ins Exchange, 413 Mich 573, 583-584; 321 NW2d 653 (1982). However, regarding the law, it was for the court to decide that on the basis of the common law, the Constitution, or the statutes the Legislature had enacted.
This should not be taken as dismissing the jury’s importance. It is for the jury to assimilate the facts presented at trial, draw inferences from those facts, and determine what happened in the case at issue. See, e.g., Green v Detroit UR Co, 210 Mich 119, 129; 177 NW 263 (1920). As important as those duties are, however, matters of law concern the legal significance of those facts. Accordingly, excluded from the jury’s purview are such matters as whether a party has met its burden of proof, whether certain evidence may be considered, which witnesses may testify, whether the facts found by the jury result in a party being held liable, and the legal import of the amount of damages found by the jury.[11] Thus, for example, while a jury may find a defendant has acted negligently and the amount of damages occasioned thereby, the court may apply the governmental *429 immunity act, MCL 691.1407, and find there is no liability, despite the plaintiffs damages. Or a jury may find a hunter has been injured and damaged on a defendant’s property because of the defendant’s negligence, but the recreational trespass act, MCL 324.73107, will, in certain circumstances, preclude liability. Moreover, uncontroversially, after the jury has been dismissed, a court may enter an order that doubles or trebles the amount of damages assessed, pursuant to any of the numerous statutes that concern postverdict adjustment of damages.[12] In many ways this parallels the criminal system. While the jury is to find the facts, the court defines the crime and determines the sentence along with any fees or fines to be imposed on the basis of the guidance and requirements set forth by the Legislature. The damage cap is of a piece with these numerous examples that for generations have not been successfully challenged on the basis of constitutional infirmity and that reflect the previously unchallenged understanding springing from a recognition that juries decide only facts.
Thus we conclude that the damages cap contained in MCL 257.401(3) does not offend the constitutional right of trial by jury because the amount the plaintiff actually receives was never within those things a jury can
*430 decide. Damage caps are constitutional in causes of action springing out of the common law because the Legislature has the power under our Constitution[13] to abolish or modify nonvested, common-law rights and remedies. Donajkowski v Alpena Power Co, 460 Mich 243, 256 n 14; 596 NW2d 574 (1999). The case is even more convincing when, as here, the liability—an owner’s liability for the negligent driving of a permissive user—is a statutory creation. If the Legislature can create a cause of action, it must be able to eliminate or modify it. Karl v Bryant Air Conditioning Co, 416 Mich 558, 573-576; 331 NW2d 456 (1982). Otherwise, one Legislature could bind a subsequent Legislature to not undo its work. This is impermissible. Pittsfield Twp v Washtenaw Co, 468 Mich 702, 713; 664 NW2d 193 (2003), citing Malcolm v East Detroit, 437 Mich 132, 139; 468 NW2d 479 (1991). That being so, it logically follows that the Legislature can also take the less drastic step of leaving the cause of action intact, but limiting the damages recoverable for a particular cause of action from a particular defendant.[14] See Karl, supra at 577; Shavers v Attorney General, 402 Mich 554, 623; 267 NW2d 72 (1978).
*431 Like the congressionally imposed civil penalties discussed in Tull, supra at 426, the Michigan Legislature’s limits on defendant’s liability do not involve the “ ‘substance of a common-law right to a trial by jury,’ ” or a “ ‘fundamental element of a jury trial.’ ” (Citations deleted.) These are things that are not under the umbrella of the right. In other words, MCL 257.401(3) only limits the legal consequences of the jury’s finding regarding the liability. Plaintiffs right to a jury trial is not implicated. She has had a jury trial and the jury determined the facts of her case. The jury’s function is complete. It is up to the court to determine the legal effect of those findings, whether it be that her damages are capped, reduced, increased, tripled, reduced to present value, or completely unavailable.
IV
Plaintiff also asserts that MCL 257.401(3) violates our Constitution’s Equal Protection Clause, which provides in part, “No person shall be denied the equal protection of the laws . . ..” Const 1963, art 1, § 2. It is her argument that she, unlike plaintiffs in litigation not concerning rental cars, cannot recover what the jury has decided are her damages. Thus, she argues, she is denied the equal protection of the law under the Michigan Constitution.
At issue, then, is whether the different treatment given to plaintiffs in cases of this sort is constitutional. As is apparent, when any statute is passed, the Legislature is almost invariably deciding to treat certain individuals differently from others. This exercise of discrimination between citizens means, for example, that some pay taxes at one rate, while others pay at another rate. Or some get a tax or social service benefit that others do not, and so on. Line drawing of this sort *432 is inherent in all governments and in ours it is done at the state level by the Legislature, Const 1963, art 4, § 1, and locally by local legislative bodies. The Constitution of Michigan was, in fact, written in large part to institutionalize this method of decision-making. Thus, it is apparent that when the Legislature acts, it cannot be that the mere occurrence of different outcomes between two citizens is in itself sufficient to make an act unconstitutional. Otherwise, what the Constitution gives with one hand—the right to representative government—it would have taken away with the other —the equal protection guarantee. Accordingly, courts here and elsewhere in the United States have been very guarded about overruling the legislatures’ decisions by declaring unconstitutional the classifications that a legislature defined. Indeed, the undesirability of courts entering into this area prompted United States Supreme Court Justice Oliver Wendell Holmes to deride all arguments of this sort as “the usual last resort of constitutional arguments.” Buck v Bell, 274 US 200, 208; 47 S Ct 584; 71 L Ed 1000 (1927). Yet, even with this reluctance, the courts have been willing to intervene in a narrow class of cases.
As the law has developed, the first category of such cases is where “strict scrutiny,” as the courts have described it, has been applied to the legislative decision. For a decision to be subject to such scrutiny, it must be a classification that is based on “suspect” factors such as race, national origin, ethnicity, or a “fundamental right.” Harvey v Michigan, 469 Mich 1, 6-7; 664 NW2d 767 (2003); Plyler v Doe, 457 US 202, 216-217; 102 S Ct 2382; 72 L Ed 2d 786 (1982). When such review is called for, the courts require “the State to demonstrate that its classification has been precisely tailored” and it must “serve a compelling governmental interest.” Plyler, at 216-217; DeRose v DeRose, 469 Mich 320, 353; 666 *433 NW2d 636 (2003) (“narrowly tailored”). If this is missing, the statute falls to the Constitution.
The second type of case in which courts will intervene are those described as cases that implicate intermediate level scrutiny. Here, the court, using “heightened scrutiny,” reviews legislation creating classifications on such bases as illegitimacy and gender. Harvey, supra at 8. Under this standard, a challenged statutory classification will be upheld only if it is substantially related to an important governmental objective. Id.
The third level is “rational basis” review. Under this test, “courts will uphold legislation as long as that legislation is rationally related to a legitimate government purpose.” Crego v Coleman, 463 Mich 248, 259; 615 NW2d 218 (2000). This highly deferential standard of review requires a challenger to show that the legislation is “ ‘arbitrary and wholly unrelated in a rational way to the objective of the statute.’ ” Id., quoting Smith v Employment Security Comm, 410 Mich 231, 271; 301 NW2d 285 (1981).
In the present case, plaintiff claims that the discrimination imposed on her should be evaluated on the basis of strict scrutiny. She characterizes the right at issue as the right to a jury trial. However, rights are always to be identified at “the most specific level at which a relevant tradition protecting, or denying protection to, the asserted right can be identified.” Michael H v Gerald D, 491 US 110, 127 n 6; 109 S Ct 2333; 105 L Ed 2d 91 (1989). This means that, rather than describing the right sweepingly, we are to define it with the most precision possible. In this case, we conclude that the right at issue here is not the overarching right to have a juiy trial but, more precisely, a claimed right to have a jury’s assessment of damages be unmodifiable as a matter of law.
*434 With the right properly understood, we turn to whether it is of the sort to which strict scrutiny applies. The United States Supreme Court has developed a test for strict scrutiny that this Court has followed when interpreting our own Constitution. See, e.g., DeRose, supra. Because this case clearly does not result in discrimination by race, national origin, or ethnicity, nor affect an interest that is fundamental, that is, “an interest traditionally protected by our society,” Michael H, supra at 122, this statute does not warrant strict scrutiny review. While rights such as this may be “important and valuable,” they are not encompassed by strict scrutiny unless they are “implicit in ‘the concept of ordered liberty.’ ” People v Gonzales, 356 Mich 247, 260; 97 NW2d 16 (1959), citing Palko v Connecticut, 302 US 319; 58 S Ct 149; 82 L Ed 288 (1937). The right to full recovery in tort is not only not a fundamental right, it is not a right at all, as the discussion above makes clear. Therefore, strict scrutiny does not apply.
Concerning intermediate scrutiny, this legislative action has nothing to do with allegations of gender or illegitimacy and thus heightened scrutiny is inappropriate.
This leaves the rational basis test as the proper foundation for analysis. Rational basis applies to social and economic legislation, of which this is an example. Romein v Gen Motors Corp, 436 Mich 515, 525; 462 NW2d 555 (1990). The rational basis test considers whether the “ ‘classification itself is rationally related to a legitimate governmental interest.’ ” Shavers, supra at 613, quoting United States Dep’t of Agriculture v Moreno, 413 US 528, 533; 93 S Ct 2821; 37 L Ed 2d 782 (1973). But the rational basis test does not test “the wisdom, need, or appropriateness of the legislation ....” Crego, supra at 260. We examine the purpose *435 with which the legislation was enacted, not its effects: “That the accommodation struck may have profound and far-reaching consequences ... provides all the more reason for this Court to defer to the congressional judgment unless it is demonstrably arbitrary or irrational.” Duke Power Co v Carolina Environmental Study Group, 438 US 59, 83-84; 98 S Ct 2620; 57 L Ed 2d 595 (1978). In discerning the purpose, we look to “any set of facts, either known or which could reasonably be assumed, even if such facts may be debatable.” Harvey, supra at 7. Applying this law, we conclude that this statute, obviously designed to reduce insurance costs for automobile lessors, could have been seen as a measure that, because costs of operations are reduced, increases the number of providers from which Michigan consumers may choose, or even just to enhance automobile sales for our leading domestic industry as more lessors transact business in the state. Moreover, as we are informed by a brief amicus curiae, the amendment of MCL 257.401, limiting lessor’s liability removed Michigan from the small remaining minority of states that still impose unlimited liability on automobile lessors. This could be seen as joining with other states in viewing vicarious liability as unwise public policy, at least in these circumstances. Thus, the legislation is rationally related to a legitimate governmental interest.
Because MCL 257.401(3) satisfies the rational basis test, it does not violate the rights granted by the Equal Protection Clause of the Michigan Constitution.
v
Plaintiff also argues that MCL 257.401(3) violates her substantive due process rights under the Michigan Constitution, which provides in pertinent part that no person shall “be deprived of life, liberty or property, without *436 due process of law...Const 1963, art 1, § 17. To analyze whether a plaintiffs due process rights have been violated, we determine “whether the legislation bears a reasonable relation to a permissible legislative objective.” Detroit v Qualls, 434 Mich 340, 366-367 n 49; 454 NW2d 374 (1990). This is, in essence, the same test employed in the equal protection analysis, and we reach the same result. Therefore, because we find that MCL 257.401(3) does not violate plaintiffs rights under Michigan’s Equal Protection Clause, we also find it does not violate her rights under Michigan’s Due Process Clause.
VI
By holding that damage caps legislation is permissible and inoffensive to the Constitution, we join many other states in reaching this conclusion. Some of the more well-written opinions include the Supreme Court of California, which stated in Fein v Permanente Med Group, 38 Cal 3d 137, 161; 695 P2d 665; 211 Cal Rptr 368 (1985), “[W]e know of no principle of California—or federal—constitutional law which prohibits the Legislature from limiting the recovery of damages in a particular setting in order to further a legitimate state interest.” The Supreme Judicial Court of Massachusetts, in English v New England Med Ctr, Inc, 405 Mass 423, 427; 541 NE2d 329 (1989), held, “the personal, substantive right of a tort victim to recover damages is not a fundamental interest.” (Quotation marks deleted.) The Supreme Court of Appeals of West Virginia similarly upheld damages caps in Robinson v Charleston Area Med Ctr, Inc, 186 W Va 720, 729; 414 SE2d 877 (1991), saying, “the ‘rational basis’ test for state constitutional equal protection purposes is applicable in this jurisdiction to . . . statutory limitation on remedies in certain common-law causes of action, such as statu *437 tory ‘caps’ on the recoverable amount of damages.” The Supreme Court of Indiana, in Johnson v St Vincent Hosp, Inc, 237 Ind 374, 396; 404 NE2d 585 (1980), stated, concerning a similar statutory cap on damages, “It is not a presumption which prevents recovery of more than that amount, but the policy of the law in the statute. The limitation is not a denial of due process on this basis.” The Supreme Court of Virginia, in Etheridge, 237 Va 95, 96, noted, “[A] remedy is a matter of law, not a matter of fact,” and “although a party has the right to have a jury assess his damages, he has no right to have a jury dictate through an award the legal consequences of its assessment.”
Reinforcing the findings of a majority of state supreme courts on this issue is the analysis of the United States Supreme Court that “statutes limiting liability are relatively commonplace and have consistently been enforced by the courts.” Duke Power, 438 US 88-89 n 32 (citations deleted).
What these courts have been unwilling to do is to usher in a new Lochner[15] era. It was during that era when, for a time after the industrial expansion of the United States began in the mid-nineteenth century and, on the basis of strained constitutional interpretation, the United States Supreme Court threw out economic regulations that had been won in the political process. The central theme of the Lochner jurisprudence was, as Justice Peckham wrote of the ill-fated New York state effort to regulate the hours of bakers, “[A]re we all ... at the mercy of legislative majorities?” Id. at 59. He and a majority of the Court concluded, “No.”[16] Yet, by the *438 mid-1930s, in Nebbia v New York, 291 US 502, 537; 54 S Ct 505; 78 L Ed 940 (1934), Justice Owen Roberts’s majority opinion for the Court stated that “a state is free to adopt whatever economic policy may reasonably be deemed to promote public welfare.... With the wisdom of the policy adopted, . .. the courts are both incompetent and unauthorized to deal.” From that time, economic regulation, such as the measure we deal with today, has consistently been held to be an issue for the political process, not for the courts. Along with the noted jurisdictions, we are unwilling to turn our backs on this law. It is into this mainstream that we again steer our economic regulation jurisprudence.
We hold that the damages cap in MCL 257.401(3) is constitutional and does not violate plaintiffs rights to a jury trial, equal protection, or due process under the Michigan Constitution. Therefore, we affirm the decision of the Court of Appeals.
CORRIGAN, C.J., and YOUNG and MARKMAN, JJ., concurred with Taylor, J.

 Const 1963, art 1, § 14.

 Const 1963, art 1, § 2.

 Const 1963, art 1, § 17.

 Reed also was sued. A jury found her negligent; however, she is not a party to this appeal.

 Const 1963, art 1, § 2.

 Const 1963, art 1, § 17.

 251 Mich App 586; 651 NW2d 437 (2002).

 468 Mich 943 (2003).

 Subsection 1 of the statute provides:
. This section shall not be construed to limit the right of a person to bring a civil action for damages for injuries to either person or property resulting from a violation of this act by the owner or operator of a motor vehicle or his or her agent or servant. The owner of a motor vehicle is liable for an injury caused by the negligent operation of the motor vehicle whether the negligence consists of a violation of a statute of this state or the ordinary care standard required by common law. The owner is not hable unless *424 the motor vehicle is being driven with his or her express or implied consent or knowledge. It is presumed that the motor vehicle is being driven with the knowledge and consent of the owner if it is driven at the time of the injury by his or her spouse, father, mother, brother, sister, son, daughter, or other immediate member of the family [MCL 257.401(1).]

 That this view is accurate seems incontrovertible when the scholarly Scott article is read, and it is reinforced by the most renowned commentator on the English common law in the eighteenth century, William Blackstone, who noted that the jurors “are judges of fact.” 3 Comm 361, reprinted in 5 Kurland & Lerner, The Pounder’s Constitution 345 (1986), and even Thomas Jefferson, who was famously no friend of government officials decimating the power of the common people: “. . . JURIES therefore... determine all matters of fact, leaving to the permanent judges to decide the law resulting from those facts.” Thomas Jefferson to the Abbé Arnoux, July 19,1789, reprinted in Kurland & Lerner, supra at 364. These ancient references concerning the status of the common law before Michigan’s statehood are significant because in our earliest Constitution, by way of the ordinances of 1787 for the government of the Northwest Territory, we adopted what was in essence the English common law in existence on that date. See In re Sanderson, 289 Mich 165, 174; 286 NW 198 (1939); In re Lamphere, 61 Mich 105, 108; 27 NW 882 (1886); Stout v Keyes, 2 Doug 184 (Mich, 1845).

 See Etheridge v Med Ctr Hosps, 237 Va 87, 96; 376 SE2d 525 (1989), in which the Supreme Court of Virginia noted:
“The province of the jury is to settle questions of fact, and when the facts are ascertained the law determines the rights of the parties.” . . . Once the jury has ascertained the facts and assessed the damages, however, the constitutional mandate is satisfied. Thereafter, it is the duty of the court to apply the law to the facts. [Quoting WS Forbes & Co v Southern Cotton Oil Co, 130 Va 245, 260; 108 SE 15 (1921) (citations deleted).]
The United States Court of Appeals for the Fourth Circuit has reached the same conclusion: “[0]nce the jury has made its findings of fact with respect to damages, it has fulfilled its constitutional function; it may not also mandate compensation as a matter of law.” Boyd v Bulala, 877 F2d 1191,1196 (CA 4, 1989).

 Statutes doubling or trebling damages include MCL 125.996, 230.7, 257.1336; statutes that set a minimum recoverable amount include MCL 14.309, 339.916, 445.257, 445.911, 550.1406; statutes that provide for adding costs, fees, interest or penalties to awards include MCL 35.462, 125.1449m; court-determined remittitur and additur is provided for in MCR 2.611(E); and postverdict reduction of awards to present value is permitted by MCL 600.6306(l)(c). “[T]he practice of awarding damages far in excess of actual compensation for quantifiable injuries was well recognized at the time the Framers [of the United States Constitution] produced the Eighth Amendment [relating to excessive bail, fines, or cruel or unusual punishment].” Browning-Ferns Ind of Vermont, Inc v Kelco Disposal, Inc, 492 US 257, 274; 109 S Ct 2909; 106 L Ed 2d 219 (1989).

 Art 3, § 7 of the Michigan Constitution states:
The common law and the statute laws now in force, not repugnant to this constitution, shall remain in force until they expire by their own limitations, or are changed, amended or repealed.

 We note that the Legislature has limited a plaintiffs ability to fully recover his assessed damages in other circumstances, such as where he is more than fifty percent at fault, MCL 600.2955a (constitutionality upheld in Wysocki v Kivi, 248 Mich App 346; 639 NW2d 572 [2001]) and 500.3135; if he was operating his own vehicle while uninsured, MCL 500.3135(2)(c); if a judgment in his favor was discharged in bankruptcy, MCL 600.2914; if his claim involves noneconomic damages in a products liability action, MCL 600.2946a (constitutionality upheld in Kenkel v Stanley Works, 256 Mich App 548; 665 NW2d 490 [2003]).

 Lochner v New York, 198 US 45; 25 S Ct 539; 49 L Ed 937 (1905).

 This case is taken as the signature case of this era, without doubt, because of the striking dissent of Justice Oliver Wendell Holmes, in which, regarding economic regulation, he famously said:
*438 This case is decided upon an economic theory which a large part of the country does not entertain. If it were a question whether I agreed with that theory I should desire to study it further and long before making up my mind. But I do not conceive that to be my duty, because I strongly believe that my agreement or disagreement has nothing to do with the right of a majority to embody their [sic] opinions in law. [Lochner v New York, 198 US 75 (Holmes, J., dissenting).]