# Order

Michigan Supreme Court
Lansing, Michigan

April 11, 2007

126121 (77)


NATIONAL WINE & SPIRITS, INC.,
NWS MICHIGAN, INC., and
NATIONAL WINE & SPIRITS, L.L.C.,
           Plaintiffs-Appellants,
v

STATE OF MICHIGAN,
           Defendant-Appellee,
and

MICHIGAN BEER & WINE
WHOLESALERS ASSOCIATION,
           Intervening Defendant-Appellee.
_____/

Clifford W. Taylor,
Chief Justice

Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman,
Justices

SC: 126121
COA: 243524
Ingham CC: 02-000013-CZ

On order of the Court, the motion for reconsideration of this Court's November 29, 2006 order is considered, and it is DENIED, because it does not appear that the order was entered erroneously.

MARKMAN, J., concurs and states as follows:

I concur in the order denying plaintiffs' motion for reconsideration for essentially the reasons set forth by the Court of Appeals. I therefore agree with the majority that an opinion of this Court is unnecessary. However, given that we held plaintiffs' application in abeyance pending the United States Supreme Court's decision in *Granholm v Heald*, 544 US 460 (2005), and then twice heard oral arguments on the issues presented, I wish to add something more to this Court's order of denial.

The statute at issue here, MCL 436.1205(3), prohibits an authorized distribution agent (ADA) that is licensed as a wine wholesaler from "dualing," i.e., selling a brand of wine in an area in which another wine wholesaler has already been licensed to sell that brand, unless the wine wholesaler was dualing on or before September 24, 1996.[1]

_____

[1] MCL 436.1205(3) provides:

> An authorized distribution agent shall not have a direct or indirect interest in a supplier of spirits or in a retailer. A supplier of spirits or a retailer shall not have a direct or indirect interest in an authorized

Plaintiffs contend that § 205(3) violates the Commerce Clause and the Equal Protection Clause of the United States Constitution.

The Commerce Clause, US Const, art I, § 8, provides that Congress shall have the power "[t]o regulate Commerce . . . among the several States . . . ." Derived from this is the so-called "dormant" Commerce Clause that prohibits state laws that discriminate against or unduly burden interstate commerce. *General Motors Corp v Tracy*, 519 US 278, 287 (1997).

The restriction in § 205(3) applies to all ADA wine wholesalers that were not already dualing on or before September 24, 1996. It does not distinguish between in-state and out-of-state ADA wine wholesalers. Because the restriction in § 205(3) on dualing does not so distinguish, it regulates ADA wine wholesalers evenhandedly. Therefore, § 205(3) does not discriminate against or unduly burden interstate commerce in violation of the Commerce Clause.

In order to obtain a wine wholesale license in Michigan, one must have resided in Michigan for at least one year. MCL 436.1601(1).[2] Plaintiffs argue that because of this residency requirement, as of September 24, 1996, only Michigan residents were dualing wine wholesalers, and § 205(3) effectively prohibits companies that did not dual in Michigan on or before September 24, 1996, from ever dualing in Michigan. Thus, say plaintiffs, the Legislature has "permanently barred" any out-of-state ADA/wine wholesalers from ever dualing.

distribution agent. An authorized distribution agent shall not hold title to spirits. After September 24, 1996, an authorized distribution agent or an applicant to become an authorized distribution agent who directly or indirectly becomes licensed subsequently as a wholesaler shall not be appointed to sell a brand of wine in a county or part of a county for which a wholesaler has been appointed to sell that brand under an agreement required by this act. A wholesaler who directly or indirectly becomes an authorized distribution agent shall not sell or be appointed to sell a brand of wine to a retailer in a county or part of a county for which another wholesaler has been appointed to sell that brand under an agreement required by this act, unless that wholesaler was appointed to sell and was actively selling that brand to retailers in that county or part of that county prior to September 24, 1996, or unless the sale and appointment is the result of an acquisition, purchase, or merger with the existing wholesaler who was selling that brand to a retailer in that county or part of that county prior to September 24, 1996.

[2] MCL 436.1601(1) provides: "A wholesale licensee or an applicant for a wholesale license, if an individual, shall be licensed only if that individual has resided in this state for not less than 1 year immediately prior to the date of issuance of the license."

First, out-of-state ADA/wine wholesalers are not "permanently barred" from dualing because § 205(3) allows them to dual if they acquire, purchase, or merge with a company that dualed in Michigan on or before September 24, 1996.

Second, plaintiffs have not properly challenged the one-year residency requirement of MCL 436.1601(1). At oral arguments, plaintiffs' counsel stated, "We have not challenged [§ 601(1)] nor do we think it is critical to our case." Further, whether plaintiffs would have standing to challenge the residency requirement of § 601 is questionable given that National Wine & Spirits, L.L.C., is a Michigan resident and a licensed wine wholesaler in Michigan. As plaintiffs' counsel acknowledged at oral argument, when asked why they had not challenged the residency requirement of § 601, "[B]ecause we are operating now. We have met the residency requirement . . . ."

The Fourteenth Amendment of the United States Constitution provides, "nor shall any State . . . deny to any person within its jurisdiction the equal protection of the laws." US Const, Am XIV. The rational basis test is used to review equal protection challenges to social or economic legislation. *Phillips v Mirac, Inc,* 470 Mich 415, 434 (2004). The parties agree that the rational basis test is the appropriate test in this case. "Under this test, 'courts will uphold legislation as long as that legislation is rationally related to a legitimate government purpose.'" *Id.* at 433 (citation omitted). "This highly deferential standard of review requires a challenger to show that the legislation is '"arbitrary and wholly unrelated in a rational way to the objective of the statute."'" *Id.* (citation omitted).

> The rational basis test considers whether the "'classification itself is rationally related to a legitimate governmental interest.'" But the rational basis test does not test "the wisdom, need, or appropriateness of the legislation . . . ." We examine the purpose with which the legislation was enacted, not its effects: "That the accommodation struck may have profound and far-reaching consequences . . . provides all the more reason for this Court to defer to the congressional judgment unless it is demonstrably arbitrary or irrational." In discerning the purpose, we look to "any set of facts, either known or which could reasonably be assumed, even if such facts may be debatable." [*Id.* at 434-435 (citations omitted).]

Regardless of whether MCL 436.1205(3) constitutes wise or prudent legislation, it is rationally related to an apparent governmental interest, namely, that of preventing ADAs from dominating the wholesale wine market, while protecting the business interests of wine wholesalers who were dualing on or before September 24, 1996. As the Court of Appeals explained:

> We conclude that the classification based on date is rationally related to defendant's purpose. Before 1996, there were no ADAs because the

distribution of alcohol was handled solely by Michigan's Liquor Control Commission. After defendant allowed ADAs to distribute alcohol, it realized that ADAs receiving state subsidies that were also wine wholesalers had an unfair economic advantage over wine wholesalers that were not ADAs. In order to prevent this specific unfair advantage, it decided to preclude ADA/wholesalers from dualing. But because some ADA/wholesalers already had dualing agreements, defendant did not take away their pre-existing right to dual. It was necessary for the Legislature to insert a date prior to the date the statute was effective because if it had not ADAs and wholesalers would have had a window of time in which to obtain licenses and/or dualing agreements. In other words, it would have allowed circumstances to be altered beyond the status quo. . . . Rather than penalizing a wine wholesaler that already had a dualing agreement when/if it became an ADA, the Legislature allowed the wine wholesaler to continue to operate under their preexisting agreement.

Because § 205(3) is rationally related to a legitimate government purpose, it does not violate the Equal Protection Clause.

Plaintiffs' application for leave to appeal was held in abeyance pending the decision in *Heald*. In *Heald*, the United States Supreme Court held that allowing in-state wineries to sell wine directly to consumers, but prohibiting out-of-state wineries from doing so, discriminated against interstate commerce in violation of the Commerce Clause and that the discrimination is neither authorized nor permitted by the Twenty-first Amendment.[3] Because I agree with the Court of Appeals that the statute at issue in the instant case does not discriminate against interstate commerce in violation of the Commerce Clause, there is no need to address whether the Twenty-first Amendment would authorize or permit any discrimination against interstate commerce.

TAYLOR, C.J., joins the statement of MARKMAN, J.

CAVANAGH and WEAVER, JJ., would grant reconsideration.

KELLY, J., dissents and states as follows:

Plaintiffs brought an action challenging the constitutionality of MCL 436.1205(3). The statute prevents an authorized distribution agent (ADA) from acting as a wine wholesaler and distributor in an area where a wholesale agreement existed before September 24, 1996. An exception exists for an ADA with respect to the brands of wine it sold in the area before that date.

---

[3] Section 2 of the Twenty-first Amendment provides: "The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited."

Both the trial court and the Court of Appeals found the statute constitutional. This Court heard oral argument on the application for leave to appeal and granted full briefing and argument on the merits of the case. However, the Court then inexplicably decided that leave to appeal had been improvidently granted. I joined Justice Cavanagh's statement dissenting from that decision. Now plaintiffs have filed a motion for reconsideration. I would grant that motion, reverse the judgment of the Court of Appeals, and hold that MCL 435.1205(3) is unconstitutional as applied.

## FACTS OF THE CASE

Following the adoption of the Twenty-first Amendment,[4] Michigan enacted the Michigan Liquor Control Act of 1933.[5] Under the act, there were no private distributors of spirits. Rather, the state itself purchased spirits and distributed them to licensed outlets using a three-tiered system. This model was intended to keep manufacturers, wholesalers, and retailers separate and distinct. In contrast to the distribution of spirits, the distribution of wine is and always has been done by private parties.

In 1996, the State of Michigan ended its role in warehousing and distributing spirits and adopted a system whereby authorized distribution agents handled these functions. The state paid the ADAs for their services. In the course of privatizing warehousing and delivery, the state also imposed eligibility and operational restrictions on the ADAs. Certain of those restrictions are at issue in the case and are contained in MCL 436.1205(3).[6] They prohibit ADAs who wish to sell given brands of wine

---

[4] US Const, Am XXI.

[5] MCL 436.1 *et seq.*, repealed by 1998 PA 58, effective April 14, 1998.

[6] MCL 436.1205(3) provides:

> (3) An authorized distribution agent shall not have a direct or indirect interest in a supplier of spirits or in a retailer. A supplier of spirits or a retailer shall not have a direct or indirect interest in an authorized distribution agent. An authorized distribution agent shall not hold title to spirits. After September 24, 1996, an authorized distribution agent or an applicant to become an authorized distribution agent who directly or indirectly becomes licensed subsequently as a wholesaler shall not be appointed to sell a brand of wine in a county or part of a county for which a wholesaler has been appointed to sell that brand under an agreement required by this act. A wholesaler who directly or indirectly becomes an authorized distribution agent shall not sell or be appointed to sell a brand of wine to a retailer in a county or part of a county for which another wholesaler has been appointed to sell that brand under an agreement required by this act, unless that wholesaler was appointed to sell and was actively selling that brand to retailers in that county or part of that county prior to September 24, 1996, or unless the sale and appointment is the result

wholesale from doing so in areas where a wholesaler has already been assigned to sell those brands. An exception exists for ADAs that were selling those brands in those areas before September 24, 1996.

Since the end of Prohibition, Michigan law has required every wine wholesaler to be a Michigan resident for one year before obtaining a wholesaler's license. See MCL 436.1601. The effect of MCL 436.1205(3) is that only in-state companies can take advantage of the exception, because only they were licensed wine wholesalers on September 24, 1996.

Plaintiffs National Wine & Spirits, Inc.; NWS Michigan, Inc.; and National Wine & Spirits, L.L.C., brought suit challenging MCL 436.1205(3).[7] Plaintiffs argue that the statute violates the Commerce Clause[8] and the Equal Protection Clause[9] of the United States Constitution. The trial court determined that the statute violated neither and granted summary disposition to defendants. The Court of Appeals affirmed.

ANALYSIS OF THE LAW

*The Commerce Clause*

Article 1, § 8 of the United States Constitution gives Congress the power to regulate commerce among the states. The United States Supreme Court has inferred, as a necessary corollary to this power, that state and local laws placing an undue burden on interstate commerce cannot be upheld. This principle has generally become known as the "Dormant Commerce Clause." The United States Supreme Court has adopted a two-tiered approach to determining whether a state regulation violates the Dormant Commerce Clause.

> When a state statute directly regulates or discriminates against interstate commerce, or when its effect is to favor in-state economic interests over out-of-state interests, [it is] generally struck down . . . . When, however, a statute has only indirect effects on interstate commerce and regulates evenhandedly, [it must be] examined whether the State's interest is legitimate and whether the burden on interstate commerce clearly

> of an acquisition, purchase, or merger with the existing wholesaler who was selling that brand to a retailer in that county or part of that county prior to September 24, 1996.

[7] Defendants are the state of Michigan and the Michigan Beer & Wine Wholesalers Association of Michigan. Michigan Beer & Wine Wholesalers represents 75 percent of the licensed wholesalers in Michigan. It intervened in the action on April 17, 2002.

[8] US Const, art I, § 8, cl 3.

[9] US Const, Am XIV, § 1.

exceeds the local benefits. . . . In either situation the critical consideration is the overall effect of the statute on both local and interstate activity. [*Brown-Forman Distillers Corp v New York State Liquor Authority*, 476 US 573, 579 (1986).]

Recently, in explaining its Dormant Commerce Clause jurisprudence, the United States Supreme Court said that states may not enact laws that burden out-of-state producers or shippers simply to give a competitive advantage to in-state businesses. *Granholm v Heald*, 544 US 460, 472 (2005). Laws that establish a competitive advantage deprive citizens of the right to access the markets of other states on equal terms. *Id.* at 473. A state law will violate the Commerce Clause if it forces differential treatment of in-state and out-of-state economic interests that benefits the former while burdening the latter. *Id.* at 472.

After the Twenty-first Amendment was adopted, the United States Supreme Court appeared to support the view that, when alcohol was involved, the amendment gave states the authority to discriminate against out-of-state goods. *Id.* at 484-485. However, this view has been abandoned, and it is now clear that the Twenty-first Amendment does not give states the right to pass discriminatory laws in the area. The state regulation of alcohol, like other articles in interstate commerce, is limited by the Commerce Clause. *Id.* at 487.

### *MCL 436.1205(3) is Subject to Strict Scrutiny*

The Commerce Clause problem with MCL 436.1205(3) is not straightforward. To appreciate the magnitude of the constitutional issue, it is necessary to understand the law's effects.

MCL 436.1205(3) creates two categories of ADAs: (1) ADAs that were wholesaling wine before September 24, 1996 (the favored class) and (2) ADAs that were not (the disfavored class). The two classes are treated differently but, within each class, every ADA is treated the same. At first blush, treating ADAs differently depending on whether they were in the wholesaling business on a certain date would seem not to create a Commerce Clause issue. It is only when one considers that solely Michigan companies were able to wholesale wine before September 24, 1996,[10] that the constitutional problem comes into focus.

Because only Michigan companies could sell wine wholesale in Michigan before September 24, 1996, the favored class contains only Michigan companies. The members

_____

[10] See MCL 436.1601. The constitutionality of the residency requirement is not at issue. Justice Markman finds this to be a determinative factor. It is not. MCL 436.1205(3) locks in place a system that discriminates in favor of local commerce. Plaintiffs can challenge the effects of MCL 436.1205(3) without challenging the residency requirement.

of this class are given a distinct advantage over all other ADAs. The reason is that only they can act as wine wholesalers and distributors in areas where a preexisting wholesale agreement exists.[11] By giving a class of Michigan companies this advantage, the law creates a system where out-of-state ADAs can never compete on the same terms as the favored class of Michigan ADAs. When a state statute discriminates against interstate commerce by favoring in-state economic interests over out-of-state interests, it is subject to strict scrutiny. *Brown-Forman Distillers Corp*, 476 US at 578. Because this law favors in-state entities over out-of-state entities, it can survive only if it can withstand strict scrutiny.[12]

To survive strict scrutiny, the state must demonstrate that the law in question actually furthers the purported legitimate state interest, and no less discriminatory means

---

[11] An ADA that was selling alcohol wholesale in Michigan before September 24, 1996, can continue to sell all the brands of wine in the state that it was selling on that date. One that was not can sell brands of wine wholesale only in areas where there is not a preexisting wholesale agreement for those brands. By September 24, 1996, every brand of wine sold in Michigan had been assigned to a wholesaler. Ninety-seven percent of the brands sold today in Michigan were being sold then. Thus, there are very few brands sold today for which there was not a preexisting wholesale agreement on September 24, 1996. Consequently, it is almost impossible for ADAs that were not selling here before that date to compete effectively in the market. Also, ADAs that can participate in this market are able to develop cost savings that they can pass on to suppliers. Obviously, ADAs that cannot develop these cost savings have a much harder time competing with ADAs that can.

[12] When more than one wholesaler sells the same brand of wine in the same area it is known as "dualing." In finding MCL 436.1205(3) constitutional, Justice Markman relies on the fact that an out-of-state company could "dual" if it acquired, purchased, or merged with a company that "dualed" before September 24, 1996. *Ante* at 2. The fact that a hypothetical situation can be envisioned where the statute could be constitutionally applied does not save the statute from a constitutional challenge. See *Brown-Forman Distillers Corp*, 476 US at 579. ("When a state statute directly regulates or discriminates against interstate commerce, or when its *effect* is to favor in-state economic interests over out-of-state interests, we have generally struck down the statute without further inquiry.") (emphasis added).

Justice Markman also refers to the possibility that the Twenty-first Amendment may authorize the discrimination at issue. *Ante* at 4. The state regulation of alcohol is limited by the Commerce Clause the same as state regulation of any other article in interstate commerce. *Heald*, 544 US at 487.

exist to accomplish this interest. *New Energy Co of Indiana v Limbach,* 486 US 269, 278 (1988). Intervening defendant Michigan Beer & Wine Wholesalers Association claims that the purpose of this statute is to protect existing wine wholesalers from ADAs that might desire to become wine wholesalers. It argues that this protection is needed because, without it, ADA wholesalers would have a built-in advantage over non-ADA wholesalers and could gobble up the market.

Assuming this is a legitimate purpose, there is a less discriminatory way to accomplish it. The Legislature could ban all ADAs, not just those that began wholesaling after September 24, 1996, from wholesaling brands of wine in areas where there is a preexisting wholesale agreement covering them.[13] Because this law is not narrowly tailored to achieve the government's interest, it is invalid and must be struck down.[14]

CONCLUSION

MCL 436.1205(3) locks in place a system that provides an advantage to a class of Michigan companies that no out-of-state company will ever be able to match. For this reason, it violates the Commerce Clause of the United States Constitution and should be struck down. I dissent from the order denying plaintiffs' motion for reconsideration. I would grant the motion and reverse the judgment of the Court of Appeals.

---

[13] At least two Michigan companies that were wholesalers as of September 24, 1996 have become ADAs. They handle approximately 70 percent of the wholesale business in the state. If the Legislature was concerned about unfair competition from ADAs, this question arises: Why did it include a loophole that allows two companies representing 70 percent of the market to become ADAs and continue to wholesale every brand of wine they sold before September 24, 1996?

[14] The defendants have argued that there can be no Commerce Clause violation because the disfavored class created by this law also contains Michigan companies. This is irrelevant and does not erase the discriminatory effect. The fact that a statute favors one class of in-state entities over another does not mitigate its burden on interstate commerce. *Fort Gratiot Sanitary Landfill v Michigan Dep't of Natural Resources*, 504 US 353, 357-358 (1992).



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

April 11, 2007

Clerk

t0404